# PEOPLE OF THE STATE OF NEW YORK ON THE RELATION OF CORNELL STEAMBOAT COMPANY *v.* SOHMER, AS COMPTROLLER OF THE STATE OF NEW YORK.

ERROR TO THE SUPREME COURT OF THE STATE OF NEW YORK.

No. 62.   Argued November 5, 1914.—Decided January 5, 1915.

A state tax on transmission and transportation corporations of the State imposing the tax for the privilege of carrying on such business in a corporate capacity within the State, based on the gross earnings on transportation originating and terminating within the State, and

expressly excluding earnings derived from business of an interstate character, is not violative of the commerce clause of the Federal Constitution, and so *held* as to § 184 of the Tax Laws of New York.

Such a tax is not, as to a corporation transporting merchandise on navigable waters, a license tax for the privilege of navigating public waters of the United States which is granted by Federal law, but merely a privilege for carrying on the business in a corporate capacity. *Harman* v. *Chicago*, 147 U. S. 396, distinguished.

While a State may not require a navigation license except in exceptional cases, as for compensation for improvements made by itself, it may, as to its own corporations having property within its borders, enforce its usual and customary system of taxation without infraction of the superior authority and laws of the United States concerning navigation.

Transportation between ports of a State is not interstate commerce to the extent of being excluded from the taxing power of the State because a part of the journey is over the territory of another State; and so *held* as to tows for various points in the State of New York from the harbor of New York and made up for convenience at a point in the Hudson River below Weehawken in New Jersey.

206 N. Y. 651, affirmed.

THE facts, which involve the constitutionality of § 184 of the Tax Law of New York imposing a tax on corporations based on gross earnings from transportation or transmission business originating and terminating within the State and the determination of what constitutes such interstate business, are stated in the opinion.

*Mr. H. T. Newcomb, Mr. Amos Van Etten* and *Mr. Lewis E. Carr* for plaintiff in error, submitted:

As to the nature of the tax imposed on the plaintiff in error, see §§ 180, 182, 184, New York Tax Law; *Home Ins. Co.* v. *New York*, 134 U. S. 594, 599, 600; *Lehigh Valley R. R.* v. *Pennsylvania*, 145 U. S. 192, 201, 202.

The State of New York has no right to impose any tax or burden on earnings derived from business done on navigable waters of the United States with the means, instrumentalities and facilities provided by the United States.

The place where the business was done was on navigable waters of the United States. *Ex parte Boyer,* 109 U. S. 629; *Hardin* v. *Jordan,* 140 U. S. 371, 381; *Norfolk &c. R. R.* v. *Pennsylvania,* 136 U. S. 114, 119; *Minnesota Rate Cases,* 230 U. S. 352, 399; *The Daniel Ball,* 10 Wall. 557, 563; *The Montello,* 20 Wall. 430, 439, 443; *The Robert W. Parsons,* 191 U. S. 17, 26, 35.

The vessels with which the business was done were vessels of the United States. Rev. Stat., §§ 4131, 4311; *Gibbons* v. *Ogden,* 9 Wheat. 1, 189, 215; *North River Steamboat Co.* v. *Livingston,* 3 Cowen (N. Y.), 713, 747; *Ravesies* v. *United States,* 37 Fed. Rep. 447; *Sinnot* v. *Davenport,* 22 How. 227, 240.

The men employed on the vessels doing the business were licensed under the laws of the United States. Rev. Stat., § 4131, as amended by 5 Fed. Stat. Ann., p. 397; Rev. Stat., §§ 4401, 4430, 4439, 4440, 4441, 4442, 4443.

The vessels with which the business was done were operated under and in accordance with the rules and regulations of the United States. Rev. Stat., §§ 4400, 4401.

The business by the plaintiff in error was not subject to the dominion and control of the State of New York in any respect and that State therefore could not subject it to any tax or burden. *Galveston &c. R. R.* v. *Texas,* 210 U. S. 217, 227; *Gilman* v. *Philadelphia,* 3 Wall. 724; *Gibbons* v. *Ogden,* 9 Wheat. 1, 213; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 196; *Harmon* v. *Chicago,* 147 U. S. 396, 404; *Lord* v. *Steamship Co.,* 102 U. S. 541; *Maine* v. *Grand Trunk Ry.,* 142 U. S. 217; *Phila. S. S. Co.* v. *Pennsylvania,* 122 U. S. 326, 336; *Penna. R. R.* v. *Knight,* 171 N. Y. 354, 361; *St. Louis* v. *Consolidated Coal Co.,* 158 Missouri, 342; *Sinnot* v. *Davenport,* 22 How. 227, 241; *The Daniel Ball,* 10 Wall. 557, 564, 565; *The Belfast,* 7 Wall. 624, 640; *West. Un. Tel. Co.* v. *Kansas,* 216 U. S. 1, 19.

As to the basis of the right of the State to impose tax or other burden, see *Gibbons* v. *Odgen,* 9 Wheat. 1, 213; *Har-*

mon v. *Chicago*, 147 U. S. 396, 405; *McCullough* v. *Maryland*, 4 Wheat. 316, 436.

The business as done in part involved movement of the tows in the State of New Jersey as well as New York. New York State Law, § 7, New Jersey boundary line, 5 Consolidated Laws of New York, 5570; agreement as to jurisdiction of the waters of New York harbor, Art. I, 5 Consolidated Laws of New York, 5571; *Gibbons* v. *Ogden*, 9 Wheat. 214; *Norfolk &c. R. R.* v. *Pennsylvania*, 136 U. S. 114; *Mutual Trust Co.* v. *Miller*, 177 N. Y. 51, 57; *Fifth Ave. Building Co.* v. *Williams*, 198 N. Y. 238, 247; *N. Y. C. &c. Co.* v. *Morgan*, 57 App. Div. (N. Y.) 302, 304, aff'd 168 N. Y. 1, 5; *Southern Ry.* v. *United States*, 222 U. S. 20, 27.

*Mr. Franklin Kennedy*, with whom *Mr. Thomas Carmody*, Attorney General of the State of New York, was on the brief, for defendant in error:

A tax imposed under § 184 of the New York Tax Law on a domestic corporation for the privilege of exercising its corporate franchise, measured by the gross earnings of business done on navigable waters of the United States, is not an interference with Federal control of such waters. *Munn* v. *Illinois*, 94 U. S. 113, 135.

The tax imposed by § 184 is a tax upon the exercise of corporate franchises and not a tax directly on property or gross earnings. *Flint* v. *Tracy Co.*, 220 U. S. 108, 163; *People ex rel. C. T. R.* v. *Miller*, 170 N. Y. 194; *Penna. R. R.* v. *Knight*, 171 N. Y. 354; *People* v. *Home Ins. Co.*, 92 N. Y. 328; aff'd 134 U. S. 594; *People ex rel.* v. *Knight*, 174 N. Y. 475, overruling *People ex rel. Johnson Co.* v. *Roberts*, 159 N. Y. 70.

The power of Congress over navigable streams is derived from the commerce clause and the admiralty jurisdiction clause.

Within the limits set by these two clauses the power

of the Federal Government over navigable waters is absolute and exclusive. But that power relates to the subjects specified in the Constitution and is not determined by places in which it is to be exercised. It is a jurisdiction over the subject-matter of the traffic carried on over navigable streams, and only incidentally over the streams themselves in the interest of such traffic.

So long as the State does not regulate either interstate commerce or maritime jurisdiction its laws affecting business on the Hudson river are valid, and the mere fact that the Hudson is navigable does not preclude the State from regulating its use.

The Tax Law is not a regulation of the stream; it is a regulation of the business upon it and only of the business within the State. *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 211.

The law of a State, which does not regulate interstate commerce or the use of the stream, does not trench upon the Federal powers. See *Maine* v. *Grand Trunk Ry.*, 142 U. S. 217, and the following cases in which it has since been cited as authority: *Hanley* v. *Kansas City Railway*, 187 U. S. 617; *Mich. Cent. R. R.* v. *Powers*, 201 U. S. 245, 296; *Galveston, Harrisburg &c. Ry.* v. *Texas*, 210 U. S. 217, 226; *Flint* v. *Stone-Tracy Co.*, 220 U. S. 107, 165; *Oklahoma* v. *Wells, Fargo & Co.*, 223 U. S. 298, 301; *U. S. Exp. Co.* v. *Minnesota*, 223 U. S. 335, 344; *Ewing* v. *Leavenworth*, 226 U. S. 464, 469; *Baltic Mining Co.* v. *Massachusetts*, 231 U. S. 68, 83.

All that is attempted in § 184 of the Tax Law is to tax a corporate franchise tax using the gross earnings of the company as a measure for the value of the exercise of such franchise. See *Annan* v. *Walsh*, and *Budd* v. *New York*, 143 U. S. 517.

The gross earnings by which the tax on the corporate franchises of the relator is measured were not derived from business of an interstate character.

The burden rests with the relator to show that the determination of the Comptroller is erroneous. *Roebling's Sons* v. *Wemple*, 138 N. Y. 582, 587; *Western Electric Co.* v. *Campbell*, 145 N. Y. 587; *Penn. R. R. Co.* v. *Knight*, 192 U. S. 21, 27; aff'g 171 N. Y. 354.

Under the treaty of 1833 the territorial boundary between the States of New York and New Jersey on the surface of the waters of the Hudson river up to Spuyten Duyvil creek and in New York bay, is the low-water mark on the New Jersey shore. On the surface of the water the jurisdiction of New York extends to the New Jersey shore. A boat on the surface, not attached to a wharf, is in New York. *Carlin* v. *Railroad Co.*, 135 App. Div. 876, 880; *Ferguson* v. *Ross*, 126 N. Y. 463.

Even if any of the tows passed through the State of New Jersey, for the west half of the Hudson for about ten miles north of Spuyten Duyvil creek is within New Jersey, and if they kept to the west of the center of the stream they were for those few miles in New Jersey, this does not, however, constitute interstate commerce.

Transportation of goods by railroad from one point within a State to another point within it, but passing through another State during transit, is not an interstate shipment and does not constitute interstate commerce. *Lehigh Valley R. R.* v. *Pennsylvania*, 145 U. S. 192; *Kellogg* v. *Lehigh Valley R. R.*, 115 Fed. Rep. 373; *Lord* v. *Steamship Co.*, 102 U. S. 541.

There is no distinction between transportation by rail and by water. In either case the transportation of goods between two points in the same State, but through another State, is not interstate commerce. *Pennsylvania R. R.* v. *Knight*, 171 N. Y. 364; *Hatch* v. *Reardon*, 184 N. Y. 452.

Shipment of goods from a point in the Hudson river off Weehawken which is within New York State, through

New Jersey, to another point in New York State, is not an interstate shipment and not an interference with the exclusive control of Congress over interstate commerce.

Even if the cargoes were ultimately destined for some other State than New York, the towing service was no part of a continuous carriage between States. *Int. Com. Comm.* v. *Chicago K. & S. R.*, 81 Fed. Rep. 783; *Chicago N. W. R. R.* v. *Osborne*, 10 U. S. App. 430; *Penna. R. R.* v. *Knight*, 171 N. Y. 364; aff'd, 192 U. S. 21; *Budd* v. *New York*, 143 U. S. 517.

Even if the gross earnings were derived from business of an interstate character, yet the State could constitutionally and legally measure its tax on the exercise of the franchises of its domestic corporations by such gross earnings. *Home Ins. Co.* v. *New York*, 134 U. S. 594; *Ewing* v. *Leavenworth*, 226 U. S. 464, 469; *Hanley* v. *Kansas City Railway*, 187 U. S. 617; *U. S. Exp. Co.* v. *Minnesota*, 223 U. S. 335; *Maine* v. *Grand Trunk Ry.*, 142 U. S. 217; *Penna. R. R.* v. *Wempel*, 138 N. Y. 1, 6; *Penna. R. R.* v. *Knight*, 171 N. Y. 354; *C. T. R. R. Co.* v. *Miller*, 178 N. Y. 194; *International Elevating Co.* v. *Roberts*, 116 App. Div. 30.

MR. JUSTICE DAY delivered the opinion of the court.

The proceeding which resulted in the judgment here complained of originated in an application by the Cornell Steamboat Company to review by certiorari a decision of the Comptroller of New York, denying a petition for revision and readjustment of taxes imposed by the Comptroller on the Steamboat Company for the years 1902 and 1903. These taxes were imposed under § 184 of the Tax Laws of New York (c. 60, Consolidated Laws), which, so far as it is pertinent here, reads:

"Section 184. Additional franchise tax on transporta-

tion and transmission corporations and associations.—
Every corporation . . . formed for . . . naviga-
tion . . . purposes . . . shall pay for the privi-
lege of exercising its corporate franchises or carrying on
its business in such corporate or organized capacity in
this state, an annual excise tax or license fee which shall be
equal to five-tenths of one per centum upon its gross earn-
ings within this state, which shall include its gross earnings
from its transportation or transmission business originat-
ing and terminating within this state, but shall not include
earnings derived from business of an interstate-character."

In the years 1902 and 1903, the Comptroller of the
State imposed upon the Steamboat Company taxes on its
earnings for those years, and denied the application for a
revision and readjustment. The writ of certiorari was
afterwards issued from the Supreme Court of New York
upon petition to review and correct the determination of
the Comptroller. The matter was heard in the appellate
division of the Supreme Court of New York, and that
court affirmed the determination of the Comptroller. Ap-
peal was taken to the Court of Appeals of New York, and
that court affirmed the order appealed from, and remitted
the case to the Supreme Court of the State. (206 N. Y.
651.) This writ of error is sued out to reverse the judg-
ment.

Taxes were assessed upon the return of the Steamboat
Company for the year 1902: "gross earnings, not inter-
state business, derived from all sources during the above
period, $377,146.33;" also on the return for the year 1903:
"gross earnings on business commenced and terminated
in the territorial limits of New York, derived from towing
charges upon the Hudson River (navigable waters of the
United States), earned with vessels enrolled and licensed
by the U. S. Government, i. e., business which is regulated
by the U. S. Government, and which it is claimed is not
taxable by the State of New York, $394,505.59;" which

return was followed by a supplemental return: "State of New York, County of Ulster, *ss.* George Coykendall, being duly sworn, says that he is the Vice-President of the Cornell Steamboat Company; that the report of gross earnings in the State of New York, of the Cornell Steamboat Company for the year ending June 30, 1903, verified by me on September 17, 1903, should be amended as follows: That the statement in such report of business commenced and terminated within the territorial limits of the State of New York, derived from towing charges upon the Hudson River, is made up largely of towing done in the following manner, as deponent knows from personal knowledge and information derived from the Superintendent of the company, to wit: Tows for up-river points on the Hudson River are made up at a stakeboat located at Weehawken, within the territorial limits of the State of New Jersey; that there are two stakeboats anchored in the river just below Weehawken ferry; that vessels and boats reported for the up-river tows are taken out to the stakeboats and there made fast, and the tow is there made up, the towing vessels are attached, and the course pursued by the steamers in going up the river is in the Territory of New York and New Jersey; that tows coming down the river pursue a like course, going into the territory of both States, and when the tow arrives in New York harbor, the entire tow, or the greater part thereof, is, as a usual thing, turned in the river, going into the territory of New Jersey and making the turn. Deponent further says that nearly all earnings of the company are from business done within the territorial limits of New York and New Jersey, to such extent as the State of New Jersey is included in the Hudson River and New York Bay, and that it is absolutely impossible to state just when the vessels are within the territorial limits of either State. Deponent further says that he desires to file this affidavit as a correction of the report verified September 17, 1903, by him, which report

was filed with the State Comptroller on or about the 17th day of September 1903."

These returns may be supplemented by a statement from the brief of plaintiff in error, derived from the record, as to the manner in which the towing business of the Company was done: "The tows were made up in the Hudson River at Albany, N. Y., or its vicinity, and the Steamboat Company, the plaintiff in error, thereupon attached a towing line connecting the tows with its tugs or steamers and moved the tows down or up the river, leaving the tows up-bound in the river at Albany or its immediate vicinity and those bound down the river in the bay at New York City or in the waters adjacent thereto."

It is apparent from a consideration of § 184 that the tax here imposed upon transmission and transportation corporations is for the privilege of carrying on the business in a corporate capacity within the State of New York, for which an annual excise tax or license fee is exacted equal to five-tenths of one per centum upon the gross earnings on transportation originating and terminating in the State of New York. By its express terms, the statute provides that the tax shall not include earnings derived from business of an interstate character.

It is contended that as the business of towing carried on by the plaintiff company is done upon the navigable waters of the United States, and under authority of a license granted by the United States, the State has no jurisdiction or authority to levy the tax in question, and that it is in reality and substance an attempt to enforce a license tax for the privilege of navigating the public waters of the United States, a privilege already granted under the general government. (See §§ 4400 and 4401 of the Revised Statutes of the United States, and also §§ 4438, 4439, 4440, 4441, 4442 and 4443, providing for the license of officers of vessels.)

The right of the Federal Government to regulate com-

merce, under Article 1, § 8, Subdivision 3, of the Federal Constitution, giving Congress control over interstate commerce, confers the supreme authority over navigable rivers and streams for the purpose of regulating navigation, and all that pertains thereto; and under this authority the Federal Government is supreme and may not be interfered with by the laws of the States. The subject is fully discussed in *United States* v. *Chandler-Dunbar Water Power Co.*, 209 U. S. 447. The tax here in question does not impose a license tax as a prerequisite to the navigation of the river, as was the case in *Harman* v. *Chicago*, 147 U. S. 396, cited and relied upon by the plaintiff in error, where an ordinance of the City of Chicago, imposing a license tax for the privilege of navigating the Chicago River and its branches by steam tugs licensed under the Federal authority, was held an unconstitutional exaction, as it required payment for a privilege which had already been granted within the authority of the Federal Government.

In the case now before the court, the tax, as was said by Chief Judge Cullen, in delivering an opinion in the Court of Appeals in New York in this case, concurring in the order affirming the court below without opinion, is levied upon the corporation for the privilege of carrying on its business in a corporate or organized capacity. As the Chief Judge says, if the parties beneficially interested in the company are dissatisfied with the price exacted by the State for this privilege they may carry on the business as individuals without paying any charge. In other words, the charge is not upon the navigation of the river, but is upon the doing of business as a corporation of the State within the State. While the State may not require a navigation license except in very exceptional cases, as for compensation for improvements which the State has made, a situation not presented here, it may, certainly as to a corporation of its own creation having

property within its borders enforce its usual and customary systems of taxation without infraction of the superior authority and laws of the United States concerning the navigation of rivers.

With this view of the tax now under consideration, we think the State did not exceed its authority in its imposition of a tax for the purpose stated.

But it is urged that this is a tax upon interstate commerce, and therefore beyond the power of the State, notwithstanding the statute undertakes to exempt the proceeds of interstate commerce from taxation. That interstate commerce is necessarily taxed is said to arise from the fact that the business of the Company is in fact interstate commerce, as shown by its additional return, from which it appears that vessels for up-river points on the Hudson River are taken by tows, which are made up at a stakeboat located at Weehawken, which is within the territorial limits of New Jersey, that these stakeboats are anchored in the river just below Weehawken ferry, and that the course up the river is in territory of New York and New Jersey. But transportation between the ports of the State is not interstate commerce, excluded from the taxing power of the State, because as to a part of the journey the course is over the territory of another State. *Lehigh Valley Railroad* v. *Pennsylvania*, 145 U. S. 192; *Ewing* v. *City of Leavenworth*, 226 U. S. 464, and see *Cincinnati Packet Co.* v. *Bay*, 200 U. S. 179, 183. Weehawken is opposite New York harbor, and the business upon which the tax is here imposed is all done between New York ports, and the record shows distinctly that no earnings were returned for tugs operated in New York harbor and ports outside the State. Such business was deducted as interstate business and not taxable under the terms of the statute. It is evident that the making up of the tows for the State ports in the river below Weehawken was for convenience in conducting domestic transportation,

We are of the opinion that commerce thus carried on is not interstate commerce, beyond the taxing power of the State, and that the return on which the tax was assessed did not involve the revenues of commerce among the States, and this contention must be rejected.

It follows that the decision of the Supreme Court of New York must be

*Affirmed.*