Argued May 12, modified September 15, petition for rehearing
denied October 13, 1954

# INLAND NAVIGATION COMPANY *v.*
# CHAMBERS ET AL.
# THE UPPER COLUMBIA RIVER TOWING
# COMPANY *v.* CHAMBERS ET AL.
# COLUMBIA-SNAKE RIVER TOWING
# COMPANY *v.* CHAMBERS ET AL.

274 P. 2d 104

*Jay E. Jordan,* of Portland, argued the cause for appellants. On the brief were Hickson, Dent & Coblens, of Portland.

*Theodore W. de Looze,* Assistant Attorney General, argued the cause for respondents. With him on the brief were Robert Y. Thornton, Attorney General, of Salem, Samuel B. Stewart and Howard E. Roos, of Portland.

ROSSMAN, J.

This is (1) an appeal by the Inland Navigation Company, The Upper Columbia River Towing Company, and Columbia-Snake River Towing Company from an order of the circuit court; and (2) a cross-appeal from the same order by the three officials of this state who constitute the state tax commission. The three corporations and the three officials are the only parties to this proceeding. To promote convenience, we will speak of the three companies as the taxpayers and of the officials as the commission. The taxpayers own and operate watercraft which engages in interstate commerce upon the Columbia and Willamette rivers. Each of them is a Washington corporation and each maintains its principal office in Vancouver, Washington. The vessels of the taxpayers regularly enter Oregon ports along the Columbia river for commercial purposes. Prior to January 1, 1950, the watercraft of the three taxpayers and of similar water transportation companies were not assessed for taxes. As of

January 1, 1951, the commission assessed the operating properties of the three taxpayers. Its action in so doing precipitated this proceeding. Section 110-505, OCLA, as amended by Oregon Laws 1949, ch 414, § 1, sub-section 14, rendered it the duty of the commission:

> "To make an annual assessment, upon an assessment roll to be prepared by said commission, of the property having a situs in this state, as hereinafter defined, of all  *  *  *  water transportation companies engaged in the business of transporting freight or passengers for hire upon the rivers in or adjoining the state of Oregon."

The assessment which was made, pursuant to the duty which we have just noted, eventually led, as we have already indicated, to the institution of the proceeding which is before us. We will now describe the procedure to which the taxpayers resorted to challenge the assessment.

After an assessment had been made of the operating properties of the three taxpayers, each of the latter presented to the commission a petition which stated that (1) the taxpayer is a Washington corporation; (2) the taxpayer is engaged in interstate commerce; (3) the tugs and barges which constituted the subject matter of the challenged assessment entered Oregon only for the purpose of receiving and discharging cargo; (4) the commission "has no authority to assess the property of your petitioners"; and (5) if the commission has power to assess "the authority extends only to assess such proportion of the property of the petitioners as is reasonably allocable to the State of Oregon." Each petition terminated with a prayer that the commission cancel the challenged assessment, or, in the event that it refuse to do so, reduce the amount of the assessment.

After receipt of the three petitions the commission granted the petitioners a hearing June 25, 1951. The petitioners were represented at the hearing, not only by their officers, but also by counsel. According to the orders which the commission entered July 10, 1951, the petitioners submitted to the commission "briefs, arguments and other statistical data." The orders entered in the three cases reduced the valuation of Columbia-Snake River Towing Company, but sustained the valuations of Inland Navigation Company and Upper Columbia River Towing Company.

After the commission had taken the action which we just mentioned, each of the petitioners, on July 24, 1951, filed with the circuit court a notice of appeal which read:

"Pursuant to the provisions of Sec. 110-524 O.C.L.A. as amended, the undersigned herewith appeals to this Court from the order of the Tax Commission of the State of Oregon, entered July 10, 1951 in the matter of Joint Petition of The Upper Columbia River Towing Co., the Inland Navigation Company and the Columbia-Snake River Towing Company filed with the said Tax Commission of Oregon and attach hereto the documents and records required to be filed pursuant to Sec. 110-524 O.C.L.A. as amended."

The circuit court consolidated the three causes for the purpose of trial and upon the conclusion of the trial entered its decree. The latter sustained the commission's power to assess the property, but made a modification of the amount of the assessment. May 15, 1953, each of the taxpayers filed notice of appeal to this court.

We call attention to the fact that the taxpayers sought in the circuit court a review of the commission's

order by the process of appeal, and did not resort to injunction, prohibition or some other form of remedy.

The taxpayers, that is, the appellants, have presented no assignments of error, but the nature of the contentions which they make is indicated by the following propositions which we quote from their joint briefs:

"By virtue of the Oregon Admissions Act, the State Tax Commission lacks jurisdiction to assess under this statute, and lacks jurisdiction to assess in the manner used."

"The taxing statute is on its face, a direct tax on the use of navigable waters."

"The State Tax Commission was without jurisdiction to employ the method used in its assessment."

"The appellant's property had no situs in the State of Oregon.

A. The Law of Situs of Vessels.

B. The facts in the instant case prohibit situs."

The findings of fact entered by the circuit court, in referring to the watercraft of each of the taxpayers, says: "The barges, tugs and other vessels are present in Oregon with consistent continuity and not on a temporary basis." The assessment orders of the commission which the taxpayers challenge, after first finding the value of the property of each taxpayer, determine the part of the total which was assessable in Oregon by means of an apportionment basis. The latter employed a percentage ratio derived through comparison of the ton-miles of business done in Oregon with the taxpayer's total ton-miles.

Each of the three taxpayers argues that (1) the tax which has been assessed is, in effect, a toll, and

since such is its alleged nature it is invalid by virtue of § 2 of the Congressional enactment which admitted Oregon into the Union (Vol 9, OCLA, pp 71, 72); and (2) the property which has been assessed had no tax situs in this state and, hence, could not be taxed in Oregon. The commission contends that the statutes which authorize appeals to the circuit court from assessment orders entered by the tax commission enable the court to determine nothing except the value of the appellant's property and the share thereof which Oregon may tax. We will now take note of the statutes which govern appeals from orders entered by the commission in instances of the kind before us.

Before beginning our examination of the pertinent statutory provisions which govern appeal we will first take notice of the enactments which prescribe the duties which the commission must perform in the assessment of watercraft of the kind with which this proceeding is concerned.

In proceeding we will employ the sections of OCLA as amended, although Oregon Laws 1951, ch 586, repealed the provisions which we are about to quote, and in so doing provided through § 30 thereof, "This act shall be given effect retroactively to include the tax year commencing on, and the assessment of, January 1, 1951." The 1951 enactment became effective August 2, 1951. Notice of appeal in the cases at bar were given July 24, 1951. Although the 1951 statute appears to repeal the preceding legislation, yet sections 2 through 24 thereof are in the main a rewriting of the previous enactments. For example, § 1 of the 1951 measure, in enumerating the repealed sections, says: "In lieu thereof there are enacted sections 2 to 25, inclusive, of this Act." Whether this proceeding is governed by the antecedent legislation or by the 1951 enactment is un-

important in this case, for so far as the latter is concerned the antecedent and 1951 enactments are substantially the same. We shall, however, assume that this case is governed by the appropriate provisions of OCLA as amended. See *Newsom v. Greenwood,* 4 Or 119, and 82 CJS, Statutes, § 435, p 1010, where it is said:

> "The repeal of a statute does not operate to impair or otherwise affect rights which have been vested or accrued while the statute was in force. * * * Where a new statute continues in force provisions of an old statute, although in form it repeals them at the moment of its passage, a right of action created by the old statute is not thereby destroyed."

Section 110-512, OCLA, as amended by Oregon Laws 1941, ch 440, said:

> "It shall be the duty of the said state tax commission to prepare each year an assessment roll, in which shall be assessed, as of the first day of January at the hour of 1 o'clock a. m. of such year, the true cash value of all the properties of the several companies subject to taxation under this act, which said assessment roll shall not be final until reviewed as herein provided."

Section 110-513, OCLA, provided:

> "The said commission, for the purpose of arriving at the actual cash value of the property assessable by it, as herein provided, may value the entire property, both within and without the state of Oregon, as a unit. In case it shall value the entire property as a unit, either within or without the state of Oregon, or both, the commission shall make deductions of the property of said company situated outside of the state, and not connected directly with the business thereof, as may be just, to the end that the fair proportion of the property of the said company in this state may be ascertained."

Section 110-517, OCLA, as amended by Oregon Laws 1941, ch 440, § 15, rendered it the duty of the commission to publish notice

"setting forth that it will attend at the capital on the second Monday in June and publicly examine the assessment roll by it made, and review the same, and correct all errors in valuation, * * * and in apportionments of assessments made by it; and it shall be the duty of the persons and companies interested to appear at the time and place appointed."

Section 110-519, OCLA, read:

"It shall be the duty of said state tax commission to review, examine and correct the assessment roll by it made and to increase or reduce the valuation of property therein assessed, so that the same shall be the full cash value thereof, * * * to correct errors in apportionments of assessments therein. If it shall appear to such commission that there is any real or personal property * * * which is not assessable by said commission, but which has been assessed by it, said commission may make proper corrections of the same. * * * If it shall appear to said commission that the property in any county as assessed by the county assessor * * * has been assessed at other than its full cash value, the commission shall change the apportionment of property within that county assessable by said commission in a like proportion."

Section 110-520, OCLA, as amended by Oregon Laws 1941, ch 9, § 1, said:

"* * * Petitions or applications for the reduction or change of apportionment of a particular assessment shall be made in writing, verified by the oath of the applicant, * * * and be filed with the commission on or before the day the commission is required by law to meet as a board of review, and any petition or application not so made,

verified and filed shall not be considered or acted upon by the commission.''

Section 110-521, OCLA, provided that the commission while ''sitting for the purpose of reviewing and apportioning the said roll'' shall continue its session ''until the examination, review, correction, equalization and apportionment of the said roll shall be completed''. Section 110-522, OCLA, prescribes the manner in which the commission shall manifest the result of its deliberations.

The above are the parts of our statutes which have relevancy to the issues before us and which prescribe the duties of the commission. It will be observed that the commission is charged with the duty of assessing properties such as those which these appealing taxpayers own. After it has compiled its assessment roll, the commission, through the medium of a published notice, must make announcement that on the second Monday of June it will sit as a board of review and that in the course of its session it will make all needed corrections in the assessment roll and in its apportionment orders. Applications for the reduction or change of assessments and apportionment must be disregarded, as we have seen, unless they are in writing, verified and on file.

We now turn to the provisions of our laws which provide for appeal to the circuit court from the commission's rulings and which prescribe the nature of the relief which the court may grant.

Section 110-524, OCLA, as amended by Oregon Laws 1941, ch 9, § 2, provided:

''Any person or company assessed under provisions of paragraph 14, section 110-505, O. C. L. A., who shall have petitioned for the reduction or change of apportionment of a particular assess-

ment, * * * who shall be aggrieved by the action of such commission, may appeal therefrom to the circuit court. * * * The appeal shall be taken and perfected in the following manner, and not otherwise:

"1. The party desiring to appeal from the action of such commission may cause a notice, to be signed by himself, * * * to be filed with the secretary of said commission * * *.

"2. Within ten days of the giving of such notice the said party, to be known as the appellant, shall file with the clerk of the circuit court * * * a transcript of the petition for reduction of assessment or so much of the record of the said commission as may be necessary intelligently to present the questions to be decided by the circuit court, * * *.

"The appeal shall be heard and determined by the circuit court in a summary manner and shall be determined as a suit in equity, except as herein otherwise provided. Either the appellant or any county to which any portion of the assessment complained of is or may be apportioned, as appellee, shall be entitled to the compulsory attendance of witnesses, * * *. If, upon the hearing, the court finds the amount at which the property was finally assessed by the said commission is its actual cash value, and the assessment was made fairly and in good faith, it shall approve such assessment; but if it finds that the assessment was made at a greater or less sum than the actual full cash value of the property, or if the same was not fairly or in good faith made, it shall set aside such assessment and determine such value, and a certified copy of the order or judgment of the circuit court shall be sufficient warrant for the apportionment, levying and collecting of taxes against such property and upon such valuation so determined."

The foregoing are the statutory provisions which govern the issues before us.

▮ Due process of law does not demand inexorably that the state make provision that owners may appeal to the courts from assessments entered by the tax commission. If the administrative agency had adequate powers to deal openly, fairly, justly and impartially with the subject matter entrusted to its jurisdiction, the state generally need not provide for an additional hearing in its courts: 42 Am Jur, Public Administrative Law, § 137, p 479. In *Cohn v. State Tax Commission*, 118 Or 92, 245 P 1085, this court said: "Appeals are not allowed as a matter of right but only in pursuance of and to the extent as provided by statute." See, to like effect, *Smith Securities Co. v. Multnomah County*, 98 Or 418, 192 P 654, 194 P 428. Further, although the circuit court has general jurisdiction and is possessed of both law and equity powers, the state need not grant to a litigant whom it authorizes to resort to that court by way of appeal the benefit of all of that court's powers: *Wadhams & Company et al. v. The State Tax Commission et al.*, 202 Or 132, 273 P2d 440; *Quinn v. Hanks*, 192 Or 254, 233 P2d 767, and *Garner v. Garner*, 182 Or 549, 189 P2d 397.

The taxpayers-appellants do not claim that the commission failed to afford them an open, fair, just and impartial hearing upon all phases of the assessment of their properties.

One who wishes to challenge an order made by the tax commission and who chooses the remedy of appeal granted by § 110-524, OCLA, as amended, is confronted with the fact that the circuit court can go no further in redressing his alleged grievances than that section of our laws permits it to go.

This court has twice in recent years construed statutes similar to § 110-524, OCLA, as amended, for the purpose of determining the powers which the cir-

cuit court may exercise in disposing of appeals to that court from assessments entered by the tax commission. *Wadhams & Company et al. v. The State Tax Commission et al.,* supra, and *In re GeBauer Apartments,* 170 Or 47, 131 P2d 962. The statute which governed the outcome of those two cases was enacted in 1939 and read as follows:

> "Appeals shall be heard and determined by the court in a summary manner, as a suit in equity, except as herein provided. * * * If on the hearing the court finds that the amount at which the property finally was assessed is its reasonable true cash value and that the assessment is reasonably proportionate to assessed valuations of similar properties in the county, it shall approve such assessment; but if the court find that the assessment was made at a greater sum than the true cash value of the property, or that such property was assessed disproportionately to other properties in the county, it shall set aside such assessment and determine the correct assessed valuation thereof."

The property which was the subject matter of the challenged assessment in *In re GeBauer Apartments* was an apartment house. The properties in the Wadhams case were stocks of merchandise owned by the several taxpayers who were the plaintiffs in that suit. Obviously, the tax involved in those cases, as the tax assessed in this case, was an ad valorem or property tax.

In *In re GeBauer Apartments,* the taxpayer challenged the assessment upon a direct charge that it was excessive. In the Wadhams case the taxpayer made no contention that their merchandise stocks were assessed at sums greater than their true value, nor did they claim that they were assessed in amounts disproportionate to similar property owned by others, but they averred that the values which the challenged assessments placed upon the merchandise stocks were

disproportionate to values which the assessor placed upon real property.

The very first words of the decision in *In re Ge-Bauer Apartments* were these: "This is a special proceeding". Those words were quoted in *Wadhams & Company et al. v. The State Tax Commission et al.* and to them that decision added some elucidating passages. The Wadhams decision quoted as follows from *In re GeBauer Apartments*:

"By the 1939 amendment only two questions are left open for consideration by the courts, to wit: (1) Was the property involved assessed at a greater sum than its true cash value? And (2) was the assessment reasonably proportionate to the assessed valuation of similar property in the county?"

The Wadhams decision, referring to the words just quoted, said:

"The construction thus placed upon the statute is re-affirmed. It is manifest that the legislature, in adopting the 1939 amendment, intended to place limits upon the jurisdiction of the courts where there had been none before, and that on a question of disproportion between assessed valuations and the scope of the court's inquiry was limited to properties in the county similar to the property of the complaining taxpayer.

\* \* \* \* \*

"That stocks of merchandise are dissimilar properties from buildings and improvements on land, is self-evident. The appellants, therefore, have presented no issue which either the Circuit Court or this court is authorized by the statute to decide."

The similarity between the part of § 110-524, OCLA, as amended, which prescribed the jurisdiction of the circuit court when it decided this case and the statute which controlled *In re GeBauer Apartments,* supra,

and *Wadhams & Company v. The State Tax Commission,* supra, is evident.

■ We believe that § 110-524, OCLA, as amended, authorizes the circuit court, when it adjudicates an appeal from an assessment made by the tax commission, to consider nothing but valuation and apportionment. The court is empowered by that section to alter an assessment and to adjust an apportionment in the event that the evidence convinces the court that the assessment does not reflect the property's true value, or that the apportionment is erroneous; but the court can go no further than to adjust valuations and apportionments.

The taxpayers-appellants present no issue of valuation. In fact, while this proceeding was pending in the circuit court, the parties agreed upon the value of the properties of each of the three taxpayers. Since we need devote no time to value, we pass on to the issue of apportionment.

As we have indicated, the commission determined the fraction of the value of each taxpayer's property which is assessable in Oregon by employing a percentage derived through a comparison of the ton-miles of business done by each taxpayer in Oregon with that concern's total ton-mile business. By ton-miles we mean the total tonnage moved multiplied by the number of miles for which it was carried. After the commission had made the calculations just indicated it disposed of apportionment in this way:

1. All ton-miles upon the Willamette river were apportioned to Oregon.
2. All ton-miles on Washington rivers and upon the part of the Columbia river which lies wholly in Washington were apportioned to Washington.
3. The total ton-miles of movement from any

point in Oregon to another point in Oregon on the Columbia river was apportioned to Oregon.

4. The total ton-miles of movement from any point in Washington to another point in Washington on the Columbia was apportioned to Washington.

5. The total ton-miles from a point in Oregon on the Columbia to a point in Washington on the Columbia, and vice versa, were divided equally and then one half was apportioned to each of the two states.

■ The taxpayers argue that although their tugs and barges constantly make recurring visits to Oregon points for the purpose of receiving and discharging freight, they acquire no tax situs in this state and that, therefore, they were not assessable in Oregon. For the reasons which are set forth in preceding paragraphs we do not believe that the remedy of appeal for which § 110-524, OCLA, makes provision authorizes the circuit court to entertain issues of situs. Hence, we disregard that contention.

We will now consider the commission's cross appeal. The circuit court reduced the apportionments represented in our schedule by numerals 3 and 4 by awarding to both Oregon and Washington, not 100% of the total miles in the instances represented by numerals 3 and 4, but only 50%. For example, if a barge brought oil from Portland to Umatilla, both of those points being in Oregon, the commission's apportionment awarded the total ton mileage to Oregon, but the circuit court's apportionment awarded to Oregon only one half of the tone mileage. Likewise, if a barge brought wheat from Stevenson to Vancouver, both points being in Washington, the circuit court's apportionment awarded to Oregon 50% of the ton mileage although the commission had awarded no part of it to this state.

The evidence fails to disclose the distance which the taxpayers' watercraft travel on either side of the unmarked boundary line in the Columbia while they travel, let us say, between Arlington and The Dalles or between Stevenson and Vancouver.

*Pullman's Car Co. v. Pennsylvania,* 141 US 18, 11 SCt 876, 35 L ed 613, sustained the validity of a Pennsylvania statute which rendered taxable by Pennsylvania the proportion of the capital stock of the Pullman Company which was invested and used in Pennsylvania. The manner in which the proportion was ascertained is described in the opinion as follows:

"The mode which the State of Pennsylvania adopted, to ascertain the proportion of the company's property upon which it should be taxed in that State, was by taking as a basis of assessment such proportion of the capital stock of the company as the number of miles over which it ran cars within the State bore to the whole number of miles, in that and other States, over which its cars were run."

Having described the method of apportionment, the court continued:

"This was a just and equitable method of assessment; and, if it were adopted by all the States through which these cars ran, the company would be assessed upon the whole value of its capital stock, and no more."

In *Ott v. Mississippi Barge Line,* 336 US 169, 69 SCt 432, 93 L ed 585, the court held that the principle which was employed in the Pullman Car case enabled the State of Louisiana and the City of New Orleans to impose ad valorem taxes upon watercraft which, in transporting freight in interstate commerce along the Mississippi and Ohio rivers, came to pause in New Orleans to unload and reload freight. The owners of the vessels had offices or agents in Louisiana but their

principal places of business were elsewhere. From the description given in the decision of the manner in which the several companies conducted their business, we infer that their operations did not differ in any material manner from the methods employed by the three companies which are the appellants in the case at bar. The watercraft of the companies remained in Louisiana only long enough to discharge and take on cargo and to make needed repairs. Louisiana and City of New Orleans levied their ad valorem taxes upon the operating properties of the companies "on the ratio between the total number of miles of appellee's lines in Louisiana and the total number of miles of the entire line." Seemingly, Oregon's formula in employing ton-miles instead of resorting only to miles traveled is calculated to yield a more equitable result. The decision, in sustaining the validity of the challenged taxes and of the apportionments, said:

"* * * We see no practical difference so far as either the Due Process Clause or the Commerce Clause is concerned whether it is vessels or railroad cars that are moving in interstate commerce. The problem under the Commerce Clause is to determine 'what portion of an interstate organism may appropriately be attributed to each of the various states in which it functions.' *Nashville, C. & St. L. R. Co. v. Browning,* 310 U. S. 362, 365. So far as due process is concerned the only question is whether the tax in practical operation has relation to opportunities, benefits, or protection conferred or afforded by the taxing State. See *Wisconsin v. J. C. Penney Co.,* 311 U. S. 435, 444. Those requirements are satisfied if the tax is fairly apportioned to the commerce carried on within the State.

"There is such an apportionment under the formula of the *Pullman* case. Moreover, that tax, like taxes on property, taxes on activities confined solely to the taxing State, or taxes on gross receipts

apportioned to the business carried on there, has no cumulative effect caused by the interstate character of the business. Hence, there is no risk of multiple taxation."

The quoted passage indicates that the justification for the local tax upon watercraft which moves in interstate commerce has its basis in the opportunities, benefits and protection afforded by the taxing state or municipality.

It appears reasonable to infer that the opportunities, benefits and protection which are afforded to transportation companies, such as those which were involved in the Ott case and that are before us in the proceeding now under consideration, are available to the carrier principally at the ports to which its watercraft resort. It is at those places where the carrier is presented opportunities to secure business and an adjustment or adjudication of its rights if the latter become involved in controversy. Likewise, at those places the carrier is granted police, fire and other protection for its operational facilities.

The taxpayers depend upon *Greyhound Lines v. Mealey,* 334 US 653, 68 SCt 1260, 92 L Ed 1633, and *New York ex rel. Cornell Steamboat Co. v. Sohmer,* 235 US 549, 35 SCt 162, 59 L Ed 355. The Greyhound Lines decision held invalid a tax levied by New York on the gross receipts of the carrier for transportation between two points in New York but over routes which lay 42.53% in New Jersey and Pennsylvania. Only 57.47% of the route was in New York. The New York tax was levied upon the entire receipts. In holding the tax invalid, the court mentioned, "There is no dispute as to feasibility in apportioning this tax." It ruled:

"* * * If New Jersey and Pennsylvania could claim their right to make appropriately apportioned

claims against that substantial part of the business of appellant to which they afford protection, we do not see how on principle and in precedent such a claim could be denied. This being so, to allow New York to impose a tax on the gross receipts for the entire mileage—on the 57.47% within New York as well as the 42.53% without—would subject interstate commerce to the unfair burden of being taxed as to portions of its revenue by States which give protection to those portions, as well as to a State which does not. * * * By its very nature an unapportioned gross receipts tax makes interstate transportation bear more than 'a fair share of the cost of the local government whose protection it enjoys.' "

We have mentioned the fact that the three taxpayers cite *New York ex rel. Cornell Steamboat Co. v. Sohmer.* In the Greyhound Lines case, the court made the following comment concerning that decision:

"* * * Again, it would have made for a less dialectical, if not more coherent, development of the law to sustain a New York gross receipts tax on a New York corporation, engaged in towing vessels between ports in the State of New York on the Hudson River traversing the New Jersey side but not touching its shore, on the ground that upon the facts of that case, and more particularly New Jersey's relation to the transactions (very different from those now before us), New York was not burdening interstate commerce, rather than to hold that 'transportation between the ports of the State is not interstate commerce, excluded from the taxing power of the State, because as to a part of the journey the course is over the territory of another State.' "

It will be noticed that the court stated affirmatively in the Greyhound Lines decision that apportionment of the tax under scrutiny in that case was feasible. One can readily understand that apportionment in

that case must have been feasible. Of the total mileage which the carrier traveled 47.53% of it was run upon roadways and pavements which Pennsylvania and New Jersey had constructed; yet New York proposed to tax the entire fare. Presumably, the mileage run in the three states could have been used as a basis for apportionment of the tax. But in the instant case the record affords no means of determining how many miles a barge travels in either Oregon or Washington on its way, say, between Arlington and The Dalles. Any apportionment of the ton-mileage of the business done between such points would have to be based upon guesswork.

The commission resolved the difficulty involved in apportionment by giving to Washington the total ton-mileage for shipments that move between Washington points located on the Columbia, and accorded similar treatment to Oregon for cargo moving between Oregon points on the stream.

As we have seen, the justification for exacting a tax on watercraft and other instruments of interstate commerce is the benefit, protection and opportunities which the several taxing states accord to the carrier. It must be manifest, as has already been indicated, that those benefits are offered largely at the ports where the watercraft calls. The difference in the service which motorcarriers obtain from the use of paved roads, built at the expense of the state, and that which watercraft obtains from using the water of streams is obvious.

We do not believe that *Greyhound Lines v. Mealey,* supra, and *New York ex rel. Cornell Steamboat Co. v. Sohmer,* supra, require a conclusion that the apportionment which is attacked by this appeal is unfair and unjust.

Although many decisions are called to our attention in the briefs submitted by the parties, we believe that those which are reviewed in the preceding paragraphs suffice to develop the principles of law which govern apportionment.

■ Taxation is a very practical matter. The reasons for apportionment can be readily understood, and the legal rules which govern the apportionment of value are few. They have their origin in fair play and good sense; but the practical application of the rules is difficult. To make an apportionment which will be entirely just cannot be done easily. One who undertakes to apportion value for taxation purposes and who wishes to be precisely just would have to take into consideration some factors which received no mention in the record. For example, he might find it necessary to consider, not only ton-miles, but also the number of days which the carrier's equipment stayed in the various ports where it called and the facilities which it used while there. Factors of that kind apparently would be more important to a precisely just apportionment than the number of miles which the equipment moved along a given stream. In truth, since apportionment is a very practical matter, the man on the bench finds it difficult to envision all of the factors which are worthy of attention. It seems certain that the tax commission, which is daily confronted with the practical problems attendant upon taxation and apportionment, is best equipped to resolve problems of the kind which this case presents. As we have seen, the tax commission is charged with the duty of making the assessment roll for properties of the kind which these three appealing taxpayers own. Next, the commission sits as a board of tax review before its assessment roll becomes final. When it sits in that quasi-judicial capacity it is re-

quired to entertain all complaints which are preceded with petitions. The record indicates that the commission bestowed studious attention upon the very problem which this appeal presents to us. The law presumes that the commission faithfully performed its duties. One who wishes to challenge an order entered by the commission has the burden of proof and he must come forward with presuasive evidence in support of his claim of error: *Appeal of Kliks,* 158 Or 669, 76 P2d 974.

■ We are not satisfied that the ton-milage traveled along the Columbia between two Oregon ports should be divided into halves and that each of the bordering states should be apportioned a half. We think that the formula adopted by the commission is fair and just. In view of our belief, it follows that the circuit court erred when it modified the apportionment made by the commission. To that extent the decree is set aside. In all other respects it is affirmed. The challenged order of the commission is free from error. Costs and disbursements will be awarded to neither party.