# CINCINNATI, PORTSMOUTH, BIG SANDY AND POMEROY PACKET COMPANY *v.* BAY.

### ERROR TO THE SUPREME COURT OF THE STATE OF OHIO.

No. 174.   Argued December 15, 1905.—Decided January 2, 1906.

Where it appears from the record of a case in a state court that a Federal question was raised, and, in the absence of an opinion, it appears from a certificate made part of the record that it was not raised too late under the local procedure, and that it was necessarily considered and decided by the highest court of the State, this court has jurisdiction to review the judgment on writ of error.

A contract is not to be assumed to contemplate unlawful results unless a fair construction requires it; and where a contract relates to commerce between points within a State, both on a boundary river, it will not be construed as falling within the prohibitions of the Sherman act because the vessels affected by the contract sail over soil belonging to the other State while passing between the intrastate points.

Even if there is some interference with interstate commerce, a contract is not necessarily void under the Sherman act if such interference is insignificant and merely incidental and not the dominant purpose; the contract will be construed as a domestic contract and its validity determined by the local law.

A contract for sale of vessels, even if they are engaged in interstate commerce, is not necessarily void because the vendors agree, as is ordinary in case of sale of a business and its good will, to withdraw from business for a specified period.


THE facts are stated in the opinion.


*Mr. Ledyard Lincoln,* with whom *Mr. Julius L. Anderson* was on the brief, for plaintiff in error:

The contract is void under the Sherman act.

Repeated attempts have been made to restrict the broad and general language of the statute, but the Federal courts and especially this court have uniformly held that the act means just what it says and cannot be confined to unreasonable restraints nor such as were condemned by the common

law before its passage. *United States* v. *Freight Assn:*, 166 U.. S. 290, 312, 340; *United States* v. *Joint Traffic Assn.*, 171 U. S. 505, 573, 575; *United States* v. *Addyston Pipe & Steel Co.*, 85 Fed. Rep. 271; *S. C.*, 175 U. S. 211; *Northern Securities Co.* v. *United States*, 193 U. S. 197, 331, 402; *Ches. & Ohio Fuel Co.* v. *United States*, 115 Fed. Rep. 610, 619.

The commerce restrained was interstate. Both the Portsmouth Company and the Bays were engaged in steamboating between ports in Pennsylvania, West Virginia, Ohio and Kentucky. Nor was the element of restraint merely ancillary. *Tuscaloosa* v. *Williams*, 127 Alabama, 110, 119.

It cannot be questioned that the transportation of persons and property from one State to another is interstate commerce. *Gloucester Ferry Co.* v. *Pennsylvania*, 114 U. S. 196; *Lottery Case*, 188 U. S. 321, 345.

The transportation of goods on a through bill of lading from one point in a given State to another in the same State by way of an adjoining State or Territory is interstate commerce. *Hanley* v. *Kansas*, 187 U. S. 617.

The States of Kentucky and West Virginia extend to low water mark on the Ohio side, so that even boats plying directly from Syracuse to Cincinnati without stopping at intermediate points would necessarily at ordinary stages of the river pass through parts of West Virginia and Kentucky. *Indiana* v. *Kentucky*, 136 U. S. 479; *Hanley* v. *Anthony*, 5 Wheat. 374; *Booth* v. *Hubbard*, 8 Ohio St. 243; *McFall* v. *Commonwealth*, 2 Metcalf (Ky.), 394.

Contracts not relating directly to interstate commerce, but local in their nature, have been held not within the prohibition of the Sherman act, although the parties contracting in fact sold commodities or solicited business beyond the state line, as the contract must affect interstate commerce directly and not remotely or incidentally. *United States* v. *E. C. Knight Co.*, 156 U S. 1; *Hopkins* v. *United States*, 171 U. S. 578; *Anderson* v. *United States*, 171 U. S. 604. But see *United States* v. *Freight Assn.*, 166 U. S. 290, 325; *Lufkin* v. *Fringeli*,

57 Ohio St. 596; *Monongahela Co.* v. *Jutte*, 210 Pa. St. 288, and cases cited in note; 74 Am. St. Rep. 235, 273; *Bement* v. *Harrow Co.*, 186 U. S. 92.

The Sherman act prohibits any contract in restraint of trade which would be illegal at common law. As to what would be illegal see *Horner* v. *Graves*, 7 Bingham, 735, 743; 24 Am. & Eng. Ency. of Law, 850, and as to rule in the State of Ohio see *Lange* v. *Work*, 2 Ohio St. 519, 528. See also *United States* v. *Addyston Pipe Co.*, 85 Fed. Rep. 271, and cases cited, p. 290; *Texas* v. *Southern &c. Co.*, 6 So. Rep. 888; *Salt Co.* v. *Guthrie*, 35 Ohio St. 666; *Emery* v. *Candle Co.*, 47 Ohio St. 320; *State* v. *Standard Oil Co.*, 49 Ohio St. 137; *South Chicago* v. *Calumet*, 171 Illinois, 391; *Anderson* v. *Jett*, 89 Kentucky, 375 (a case of competing steamboat lines).

The two packet companies who signed the contract were not engaged in private, but in quasi-public business, and therefore any restraint upon such business would be prejudicial to the public interest and cannot be sustained. *United States* v. *Freight Assn.*, 166 U. S. 333; *Gibbs* v. *Baltimore*, 130 U. S. 396.

The Federal question was raised properly and in time.

If the Federal or jurisdictional question be raised for the first time in the assignments of errors in the Supreme Court of the State, the question is presented in time. *Farmers' Ins. Co.* v. *Dobney*, 189 U. S. 301; *Land & Water Co.* v. *San Jose*, 189 U. S. 179; *C., B. & Q. R. R.* v. *Chicago*, 166 U. S. 226, 231; *Rothschild* v. *Knight*, 184 U. S. 334, 339; *Furman* v. *Nichol*, 8 Wall. 44, 56.

*Mr. Lawrence Maxwell, Jr.*, and *Mr. Joseph S. Graydon* for defendants in error:

No Federal question is presented or was properly raised.

The vessels affected by the contract were not engaged in interstate commerce. *Hanley* v. *Kansas City Railway*, 187 U. S. 617, does not apply. See *Lehigh Valley* v. *Pennsylvania*, 145 U. S. 192. The court will not assume facts to make the contract illegal. *Herpolsheimer* v. *Funke*, 95 N. W. Rep. 687;

*Jewett Publishing Co.* v. *Butler,* 159 Massachusetts, 517; *Mills* v. *Dunham,* 1 Ch. 1891, 576, 586.

MR. JUSTICE HOLMES delivered the opinion of the court.

This is an action upon a contract, brought by the defendants in error to recover an instalment of money due by its terms. A judgment in their favor was sustained by the Supreme Court of the State, although the petition in error to that court set up that the contract was illegal under the act of Congress of July 2, 1890, c. 647, 26 Stat. 209. No opinion was delivered, but a certificate that this objection was relied upon and that it necessarily was considered was made part of the record by that court. Therefore the present writ of error properly was allowed. The record shows that the question was raised and the certificate shows that it was not treated as having been raised too late under the local procedure, a point upon which the state court is the judge. It is enough that the Federal question was raised and necessarily decided by the highest court of the State. *Farmers' & Merchants' Insurance Co.* v. *Dobney,* 189 U. S. 301.

The contract was an indenture between the Portsmouth and Pomeroy Packet Company, George W. and William Bay, of the first part, and the Cincinnati, Portsmouth, Big Sandy and Pomeroy Packet Company, of the second part. By this instrument the parties of the first part sell to the latter two steamers, two deck barges, two coal flats and five hundred dollars in the stock of the Coney Island Wharf Boat Company, for $30,500, to be paid as therein provided. The party of the second part also agrees to pay to the Bays $3,600 annually in advance for five years, provided, however, that in case of opposition to its boats by other boats running from Cincinnati to Portsmouth, Ohio, or to points above Portsmouth, not including points above Syracuse, Ohio, causing it to carry freight and passengers at certain exceedingly low rates, the time of payment of the instalments shall be postponed until the opposition has ceased. It is

further agreed that if the opposition continues for two years without interruption, and no annual payment be made, the Bays may cancel the agreement.

"It is also agreed as a part of the consideration of this agreement" that for five years the parties of the first part, or either of them, shall not be "engaged in running or in operating, or in any way be interested in any freight and passenger packet or business, or either of them, at and from Cincinnati, Ohio, to Portsmouth, Ohio, and intermediate points; nor at and from Portsmouth, Ohio, to Cincinnati, Ohio, and intermediate points; nor at and from Syracuse, Ohio, or points between Syracuse and Portsmouth, Ohio, to or for points below Portsmouth, Ohio," with a qualification as to the towing and barge business, so long as it does not interfere with the other party's freight and passenger business from Portsmouth to Cincinnati. "It is also understood in this agreement that the party of the second part will maintain the rates charged by the parties of the first part on business above Portsmouth, Ohio, said rates, however, never to exceed railroad rates between said points." The last mentioned covenants, set forth in this paragraph, are especially relied upon as making the contract illegal as in restraint of trade. The previously mentioned suspension of instalments in case of opposition rising to a certain height also is referred to as a combination to aid the purchaser in getting a monopoly of river trade between Portsmouth and Cincinnati, including, it is said, some Kentucky ports.

It might be enough, perhaps, to answer the whole contention, that it does not appear on the record that the contract necessarily contemplated commerce between the States. It would be an extravagant consequence to draw from *Hanley* v. *Kansas City Southern Ry.*, 187 U. S. 617, a case of a State attempting to fix rates over a railroad route passing outside its limits, that the contract was within the Sherman act because the boats referred to might sail over soil belonging to Kentucky in passing between two Ohio points. It may be noticed further that Ohio equally has jurisdiction on the river. *Wedding* v. *Meyler*, 192

U. S. 573.   A contract is not to be assumed to contemplate un-
lawful results unless a fair construction requires it upon the
established facts.   Technically, perhaps, there might be some
trouble in saying that the Supreme Court of Ohio did not decide
the case on the ground that the illegality was not made out as
matter of fact.

But we do not like to put our decision upon technical reason-
ing where there is at least a fair surmise that such reasoning
does not meet the realities of the case.   We will suppose then
that the contract does not leave commerce among the States
untouched.   But even on this supposition it is manifest that
interference with such commerce is insignificant and incidental,
and not the dominant purpose of the contract, if it actually was
thought of at all.   The route mentioned is between Ohio ports.
The contract, in what it especially contemplates, is a domestic
contract and, so far as it is so, is shown to be valid under the
local law by the decision of the Ohio court.   The chief and vis-
ible object of its provisions has nothing to do with commerce
among the States.   That which suspends payment of instal-
ments in case of very serious opposition is security against a
losing bargain, not a combination to gain a monopoly.   The
withdrawal of the vendors from opposition for five years is the
ordinary incident of the sale of a business and good will.

It is argued, to be sure, that the last mentioned covenant is
independent and not connected with the sale of the vessels.
The contrary is manifest as a matter of good sense, and is proved
even technically by the words "it is also agreed as a part of the
consideration of this agreement."   By these words the cove-
nant not to do business between Cincinnati and Portsmouth
for five years is imported into the sale of the ships, and made
one of the conventional inducements of the purchase.   The
price is paid not for the vessels alone but for the vessels with
the covenant.   So, still more clearly, the parallel instalments
for five years are paid for the covenant, at least in part.   It
is said that there is no sale of good will.   But the covenant
makes the sale.   Presumably all that there was to sell, beside

certain instruments of competition, was the competition itself, and the purchasers did not want the vendors' names.

This being our view of the covenant in question, whatever differences of opinion there may have been with regard to the scope of the act of July 2, 1890, there has been no intimation from any one, we believe, that such a contract, made as part of the sale of a business and not as a device to control commerce, would fall within the act. On the contrary, it has been suggested repeatedly that such a contract is not within the letter or spirit of the statute, *United States* v. *Trans-Missouri Freight Association*, 166 U. S. 290, 329, *United States* v. *Joint Traffic Association*, 171 U. S. 505, 568, and it was so decided in the case of a patent. *Bement* v. *National Harrow Co.*, 186 U. S. 70, 92. It would accomplish no public purpose, but simply would provide a loophole of escape to persons inclined to elude performance of their undertakings, if the sale of a business and temporary withdrawal of the seller necessary in order to give the sale effect were to be declared illegal in every case where a nice scrutiny could discover that the covenant possibly might reach beyond the state line. We are of opinion that the agreement before us is not made illegal by either of the provisions thus far discussed.

It only remains to say a word as to the agreement to maintain rates. This is a covenant by the purchaser, the plaintiff in error. It is not the covenant sued upon. It is not declared to enter into the consideration of the sale. If necessary, we should be astute to avoid allowing a party to escape from his just and substantially legal undertaking on such ground. The argument on the other side requires us to import a subordinate undertaking of the buyer into consideration for that which was the consideration of his debt and, in that roundabout way, to make the debt unlawful. We shall not go into such niceties beyond noticing that they are not encouraged by the cases. *Oregon Steam Navigation Co.* v. *Winsor*, 20 Wall. 64; *Bank of Australasia* v. *Breillat*, 6 Moore, P. C. 152, 201; *Pigot's Case*, 11 Co. Rep. 26*b*, 27*b*. The plaintiff in error did business between

Cincinnati and Syracuse, Ohio, and the rates referred to must be assumed to be rates within those points. If the covenant had any indirect bearing on commerce with another State, what we have said sufficiently explains why we deem it insufficient to make the whole agreement void.

*Judgment affirmed.*