**Charles F. GAETJENS, Plaintiff,**

v.

**GAETJENS, BERGER & WIRTH, Inc.,
Defendant.**

United States District Court
S. D. New York.
May 29, 1957.

Thomas D. Conway, New York City, for plaintiff (M. J. Halper, New York City, of counsel).

Charles Recht, New York City, for defendant.

THOMAS F. MURPHY, District Judge.

In this action for breach of a contract of employment plaintiff moves for summary judgment.

The contract of employment is dated July 1, 1953, and came into being as a compromise between the three stockholders of Gaetjens, Berger & Wirth, Inc., a New York corporation (herein-

after called GBW New York). A few years prior, in May 1950, the plaintiff, Weldon and GBW New York entered into a contract with William Recht giving him the right to buy the corporation's stock by applying a percentage of his sales against the purchase price. At the same time Recht was made president and general manager. Between May 1950 and June 1953 the sales volume more than doubled and Recht exercised his right to purchase, resulting in stock ownership being divided on July 1, 1953, as follows: Gaetjens, plaintiff—450 shares; Weldon—150 shares, and Recht —400 shares. In June 1953 a dispute arose between Gaetjens and Recht followed by a lawsuit. As a result of negotiations the above contract of July 1, 1953, was made. Under the terms of that contract Gaetjens sold his 450 shares to Weldon and Recht for cash and notes and received 124 shares of Gaetjens, Berger & Wirth, Inc., an Illinois corporation (hereinafter called GBW Illinois). Parenthetically, it should be stated that at that time Gaetjens was a majority stockholder in GBW Illinois and the additional shares he received accordingly increased his holdings.

In addition to the exchange of stock and cash the contract provided that plaintiff, because of his long experience with GBW.New York and his specialized knowledge, be employed as a consultant and he in turn agreed to keep himself available at all reasonable times for the performance of such duties. Employment was to commence July 1, 1953, and plaintiff was to be reimbursed at the rate of $5,000 a year in monthly installments. The contract also has the questionable provision of the corporation agreeing to pay plaintiff's widow after his decease a similar sum for the period of her life or for seven years, whichever was shorter. Cf. Alexander v. Equitable Life Assur. Soc., 1922, 233 N.Y. 300, 135 N.E. 509.

The contract further provided that it was a condition precedent to the payment of salary to plaintiff and his surviving wife that neither he nor his wife

would "directly or indirectly engage or be interested in, as owner or part owner, director, shareholder, officer, employee, agent or in any capacity or relationship whatsoever, in any other business, whether a corporation, partnership or sole proprietorship which is engaged in a business the same as or similar to that conducted by the corporation operating within the area set forth in a schedule." Such schedule includes the states of New England, the coastal states from New York to Florida, all United States possessions and territories and "export to all foreign countries, including Canada."

The New York and Illinois corporations (both of which manufacture and sell ink) were, over a period of many years, operated similar to the home and branch office operation of a single corporation and for many years had identical stock control. In 1927 all the outstanding stock of GBW New York was owned by the plaintiff and Weldon and in that year they opened a branch office in Chicago. Eventually the quantity of orders so developed that it was necessary to purchase an ink manufacturing plant in the Chicago area. At that time a partnership was organized between the plaintiff and Weldon and the assets of the Chicago branch office were transferred to the partnership. The plaintiff's son, Herbert, was in charge.

In 1947 the partnership was incorporated in Illinois as Gaetjens, Berger & Wirth, Inc. Both corporations from that time to the present advertised in the trade journals under one name, Gaetjens, Berger & Wirth, Inc., and listed a number of addresses including New York and Chicago addresses, and divided the cost of such national advertising on a 60/40 basis.

Ever since the date of the contract of employment plaintiff has been paid his monthly salary as consultant and for a period of 34 months has received a total of $14,166.67. Defendant refused to pay him the salary due on July 1, 1956, and suit followed.

It is defendant's claim that plaintiff breached the agreement in that he violated the condition precedent contained therein and quoted above, viz., that he engaged as shareholder in a business similar to that conducted by defendant and operating within the area proscribed by the contract. In support of this defendant has offered proof that GBW Illinois has made eight sales within the territory proscribed amounting to some $300 during a period of 2½ years.

Repeating these allegations it alleges as a counterclaim the payment of the $14,166.67 salary under a unilateral mistake of fact, viz., that plaintiff was not entitled to the salary because of his breach of the condition precedent and the engagement in competing business.

Defendant pleads a second counterclaim alleging that while plaintiff was an officer of the corporation between December 21, 1945 and December 20, 1951, he executed checks totalling $4,070 on defendant's bank account, the funds of which he appropriated to his own use.

In reply to both counterclaims plaintiff denies the material allegations and pleads to the second counterclaim the New York statute of limitations and a general release.

Each of the contentions raised by the motion will be treated separately.

■ As to the cause of action for breach of the contract and the defense that GBW Illinois made sales of $300 in the proscribed area, defendant obviously knew plaintiff was a stockholder in GBW Illinois. Query: Did such status and such sales violate the condition precedent amounting to a breach of contract?

It was a matter of knowledge to all the parties to the contract that plaintiff not only had a large stock interest in GBW Illinois but by the terms of the contract was acquiring further shares and increasing his equity, and all parties knew that GBW Illinois was in a competing if not identical business. They must, therefore, have intended either that the stock ownership in GBW Illinois would not by itself be a breach of the condition precedent or that GBW Illinois should not compete in territory that was proscribed.

But any agreement with GBW Illinois for market sharing would violate the anti-trust laws and no such agreement was in fact made. If the parties intended to limit the territory in which GBW Illinois could sell by the device of an agreement with its principal stockholder it would be an indirect way of accomplishing what Congress said should not be done. Apex Hosiery Co. v. Leader, 1940, 310 U.S. 469, 497, 60 S.Ct. 982, 84 L.Ed. 1311; Addyston Pipe & Steel Co. v. United States, 1899, 175 U.S. 211, 241, 20 S.Ct. 96, 44 L.Ed. 136; Las Vegas Merchant Plumbers Ass'n v. United States, 9 Cir., 1954, 210 F.2d 732, 740; United States v. General Dyestuff Corp., D.C.S.D.N.Y.1944, 57 F.Supp. 642, 646, 647.

If, as defendant argues, it was the intention of the parties to prevent plaintiff individually from competing with defendant or having an interest in any corporation that was competing, it would have been a very simple matter to specifically provide for Gaetjen's promise not to compete, cf. Cincinnati, P., B. S. & P. Packet Company v. Bay, 1906, 200 U.S. 179, 185, 26 S.Ct. 208, 50 L. Ed. 428, and if they intended that he should have no interest in GBW Illinois and GBW Illinois was a competing corporation they could easily have required Gaetjen to divest himself of his entire stock interest in that corporation. The contract itself is silent on both of these rather simple contentions and the way it was drawn leaves only two possible conclusions, (1) that the parties never contemplated that GBW Illinois was a competing corporation, or (2) that it was a competing corporation and they intended to prevent it from sharing its market.

If these intentions are the only possible alternatives of the parties to the contract in either case there could be no breach since if defendant knew that plaintiff was a majority shareholder in GBW Illinois it can be safely assumed that sales by GBW Illinois were not within the contemplation of the parties. If the intention was to keep GBW Illi-nois out of the proscribed territory that was an illegal restraint condemned by statute and cannot be grounds for the breach. In either event no issue of fact is presented warranting a trial.

■ With reference to the counterclaim seeking to recover the salary heretofore paid under a unilateral mistake of fact, under New York law, which is determinative of the issues in this case, such counterclaim does not state facts upon which a claim for relief may be granted. See Kleinfeld v. Roburn Agencies, Inc., 1946, 270 App.Div. 509, 60 N.Y.S.2d 485, which holds that in the absence of a special agreement an employer may not recover back wages or equivalent drawings paid during a period of completed employment. Accordingly, the first counterclaim is dismissed.

■■ With reference to the second counterclaim, leaving aside the appropriate statute of limitations, it would appear that the release signed by the parties is a complete defense. This release was executed by the corporation and the three stockholders at the time of the signing of the contract of July 1, 1953, and contemporaneously with it and as one of the acts to be performed in connection with such contract. Defendant, however, claims that since they did not discover the alleged conversion until 1956 or three years after the exchanging of releases it should not be bound by the release. Yet I suppose this could be said of all releases but in the absence of fraud or incapacity or some other special circumstances where the intention of the parties becomes important a release is a complete defense to all causes of action, known or unknown. Cf. Simon v. Simon, 1948, 274 App.Div. 447, 84 N.Y.S.2d 307. Defendant alleges no facts other than late discovery of the alleged conversion. This is not enough.

Accordingly, the second counterclaim is also dismissed and plaintiff is entitled to summary judgment on all issues except damages, as to which a trial is hereby ordered.

Settle order.