**TRI-CONTINENTAL FINANCIAL COR-PORATION**, a corporation, Plaintiff,

v.

**TROPICAL MARINE ENTERPRISES,** Inc., a corporation, **TMT Trailer Ferry,** Inc., a corporation, and Gibbs Corporation, a corporation, Defendants,

Owens-Illinois Glass Company, a corporation, Intervenor,

**West India Fruit & Steamship Co., Inc.,** a corporation, Impleaded Defendant.

Civ. No. 3726.

United States District Court
S. D. Florida,
Jacksonville Division.
July 26, 1958.

Arthur W. Milam, Milam, LeMaistre, Ramsay & Martin, Jacksonville, Fla., Claude Pepper, Miami, Fla., Carl W. Painter, Cravath, Swaine & Moore, New York City, for plaintiff.

Jones & Foerster, Jacksonville, Fla., Patton & Kanner, Miami, Fla., for defendant Tropical Marine Enterprises, Inc.

Marshall S. Scott, Scott, McCarthy, Preston, Steel & Gilleland, Miami, Fla., for defendant Gibbs Corp.

**2**

Wm. Alonzo Carter, Adair, Ulmer, Murchison, Kent & Ashby, Jacksonville, Fla., for intervenor Owens-Illinois Glass Co.

Harold B. Wahl, Loftin & Wahl, Jacksonville, Fla., J. Franklin Fort, Kominers & Fort, Washington, D. C., for impleaded defendant West India Fruit & Steamship Co.

SIMPSON, District Judge.

This cause coming on to be heard on plaintiff's motion for summary judgment (filed May 27, 1958) and the various pleadings herein, and the Court, after due notice, having heard full argument, and having considered the pleadings, affidavits and briefs herein, finds as follows:

1. Impleaded defendant West India Fruit & Steamship Co., Inc., chiefly engaged in car ferry operations between the United States and Cuba, sold the vessel now known as "Abaco Queen" to National Container Corporation (now intervenor Owens-Illinois Glass Company) in January, 1956. The bill of sale contained a restrictive covenant that the vessel, for 10 years, would not be operated between ports or places in the States of Georgia, Florida, Mississippi, Alabama, and Louisiana, or any one or more of them, and ports or places on the Island of Cuba, as a car ferry, train ferry, truck ferry, auto ferry, or passenger ferry, or any combination thereof, or in any service or trade between said ports or places for the transportation of passengers, or of cargo in trailers, containers, rail cars, automobiles or trucks. The covenant also provided that should it be violated National Container (now Owens-Illinois Glass Company) would be liable to West India in the sum of $1,250,000.

2. National Container later resold the vessel to defendant Tropical Marine Enterprises, Inc., with the same restrictive covenant. Plaintiff Tri-Continental Financial Corporation financed the transaction with knowledge of the covenant in the bill of sale and took a mortgage on the vessel (which mortgage is here sought to be foreclosed) although the mortgage made no reference to the restriction.

3. Plaintiff now brings this suit to foreclose the mortgage, the defendant Tropical Marine Enterprises, Inc. interposes no defense thereto and plaintiff is entitled to a decree of foreclosure subject only to the question of (a) whether the vessel should be sold subject to the restrictive covenant and (b) whether the vessel is subject to an alleged maritime lien for wharfage since January 1, 1957, claimed by defendant Gibbs Corporation.

Turning to the alleged maritime lien first, the vessel was withdrawn from navigation and accordingly a "dead ship" at the time of the accrual of the lien. See Murray v. Schwartz, 2 Cir., 1949, 175 F.2d 72, 73. Plaintiff's mortgage comes ahead of the Gibbs lien. The other contentions advanced by Gibbs have likewise been examined and found to be without merit.

Coming now to the validity of the restrictive covenant, West India, by affidavit, makes it clear it would never have sold the vessel could the vessel have been used in competition with West India. The Court is convinced that the restrictive covenant is reasonable in time, territory and extent, and is binding on any purchaser of the vessel who has notice thereof. A decision of the United States Supreme Court upholding an almost identical restriction is Oregon Steam Nav. Co. v. Winsor, 20 Wall. 64, 22 L.Ed. 315. To much the same effect is Cincinnati P. B. S. & P. Packet Co. v. Bay, 200 U.S. 179, 26 S.Ct. 208, 50 L. Ed. 428. Under these cases there is no violation of the anti-trust laws. See also West Shore Restaurant Corp. v. Turk, Fla.1958, 101 So.2d 123, and Diamond Match Co. v. Roeber, 1887, 106 N. Y. 473, 13 N.E. 419.

The Court specifically holds that not only was this a valid covenant as between the original parties, but that it is an equitable servitude, valid and binding on subsequent purchasers with notice. See Tulk v. Moxhay, 2 Phil.Ch. 774, 41 Eng. Rep. 1143 (1848), Capitol Records v. Mercury Records Corp., 2 Cir., 221 F.2d 657; Lord Stratheona Steamship Co. v. Dominion Coal Co. (1926) A.C. 108 (P. C.), where the English Privy Council

pointed out that the vessel was not bought as a free ship and that the buyer could not extinguish the right in the vessel of which he had notice; Great Lakes & St. Lawrence Transportation Co. v. Scranton Coal Co., 7 Cir., 239 F. 603; and Palmer v. Chamberlin, 5 Cir., 191 F.2d 532, 27 A.L.R.2d 416.

On consideration thereof, it is

Considered, ordered and adjudged that the motion for summary judgment be and the same is hereby granted since there is no genuine issue as to any material fact, provided that plaintiff's mortgage is superior to the Gibbs Corporation lien, and that the sale be subject to the restrictive covenant aforesaid.

The Court further grants the petition of plaintiff (filed June 17, 1958) that the purchaser at foreclosure shall be obliged to assume the obligations to the Maritime Administration pursuant to Contract MA–476 presently owned by defendant Tropical Marine Enterprises, Inc.

Counsel for plaintiff may present to the Court a form of final decree of foreclosure in accordance with the above.