**STRECKFUS STEAMERS, INC., Plaintiff-Respondent,**

v.

**CITY OF ST. LOUIS and John K. Travers, Collector of Revenue for the City of St. Louis, Defendants-Appellants,**

**Capt. Wm. F. Carroll et al., Defendants-Respondents.**

**No. 33787.**

St. Louis Court of Appeals, Missouri.

June 15, 1971.

Motion for Rehearing or to Transfer to Supreme Court Denied Oct. 6, 1971.

Application to Transfer Denied Dec. 13, 1971.

Robert W. Van Dillen, City Counselor, Aubrey B. Hamilton, Assoc. City Counselor, St. Louis, for defendant-appellant, City of St. Louis.

William R. O'Toole, St. Louis, for defendant-appellant, John K. Travers, Collector of City of St. Louis.

Lucas & Murphy, Wilder Lucas, Michael J. Molloy, St. Louis, for plaintiff-respondent.

Thomas M. O'Shea, St. Louis, for defendants-respondents.

WEIER, Commissioner.

In this declaratory judgment action, plaintiff sought and obtained a judgment of the circuit court that all shipboard employees of the steamer Admiral and motor vessel Huck Finn were members of the crews of vessels engaged in interstate trade and hence, under the provisions of Section 601, 46 U.S.C.A., the plaintiff was not compelled to withhold city earnings tax. To determine the propriety of the judgment on appeal, we must resolve the nature of the trade in which the vessels were engaged. If it was interstate, then Section 601 prohibits the withholding of taxes from members of the crews. If it was intrastate, this section would not be applicable, and the defendant city would be entitled to enforce its withholding tax ordinance, Section 145.060, Revised Code of St. Louis.

The facts are undisputed. Plaintiff presented all the evidence except a copy of the earnings tax ordinance which was introduced by the city. Plaintiff has been engaged in the operation of excursion boats on the Mississippi River. The two vessels involved in this controversy are the steamer Admiral and the motor vessel Huck Finn. The Admiral makes day and night excursions on the river, which start and end at St. Louis. All passengers board the vessel at that city and land there. No freight is carried. No landings are made at any place other than St. Louis to take on or discharge passengers. It makes no trip to any port other than St. Louis. In its travel on the Mississippi this vessel crosses the middle of the channel of the river. The master of the vessel stated he crossed the middle thread of the channel more or less constantly, favoring neither side but steering the boat according to conditions that existed at the time of travel.

The motor vessel Huck Finn is also engaged in the excursion business. It is used for hourly narrated sight-seeing trips during the day and charter trips, at night. It too departs from and returns to St. Louis. In its course of travel it also crosses and recrosses the center of the river channel. But, just as the Admiral, it operates only out of St. Louis.

The earnings tax ordinance of St. Louis imposes a one per centum tax on the wages of all employees subject to the tax who are residents of the City of St. Louis, and also on that portion of the earnings of non-residents of the City of St. Louis attributable to services performed within the City. The collector of revenue of St. Louis has made demand upon plaintiff to withhold city earnings tax from the wages of all employees on the Admiral and Huck Finn. Plaintiff has refused and filed for declaratory judgment to uphold its refusal because of the exemption contained in Section 601, 46 U.S.C.A., which reads in part as follows:

"* * * *And provided further,* That no part of the wages due or accruing to a master, officer, or any other seaman who is a member of the crew on a vessel engaged in the foreign, coastwise, intercoastal, interstate, or noncontiguous trade shall be withheld pursuant to the provisions of the tax laws of any State, Territory, possession, or Commonwealth, or a subdivision of any of them."

In answering plaintiff's petition, the defendants City of St. Louis and its collector of revenue have affirmatively pleaded that the vessels were not engaged in interstate trade within the meaning of Section 601, and pray that the court declare the wages of employees of plaintiff are subject to the earnings tax and the plaintiff itself subject to the withholding provisions of the tax ordinance. The defendant employees, who are named individually and as members of a class representing all employees, join with plaintiff in seeking the exemption provided by Section 601.

In sustaining the plaintiff's position, the court below determined that plaintiff's vessels were engaged in interstate trade within the purview of Section 601 and that the

wages of all personnel employed thereon were exempt from withholding of the city earnings tax. Defendant city on appeal contends that the vessels were not engaged in interstate trade within the meaning contemplated by congress when it passed this proviso in 1959 (Pub.L., 86–263, 73 Stat. 551), and hence the wages of all persons employed on the vessels were subject to the withholding.

■ As to the word "trade", we have no difficulty in equating it with the carriage of passengers in the excursion business. The word is frequently used with "commerce" in the laws of the United States, as in the Sherman Act (15 U.S.C.A. Sec. 1), and is commonly used in the shipping industry to describe the business engaged in regularly, such as the "spice trade" or the "trade" with a foreign country or area. (See generally: Webster's Third New International Dictionary). In the sense here used it is the transportation or carrying "trade" and encompasses the transport and carriage of passengers. "Trade" is included in "commerce", (United States v. South-Eastern Underwriters Association, 322 U.S. 533, 539, 64 S.Ct. 1162, 88 L.Ed. 1440), and, being a part thereof, its significance and meaning when used with the word "interstate" should be the same. We therefore apply the term "interstate trade" to the facts at bar as we would "interstate commerce." In such application we are admonished: " * * * interstate commerce is an intensely practical concept drawn from the normal and accepted course of business." United States v. Yellow Cab Co., 332 U.S. 218, 231, 67 S.Ct. 1560, 1567, 91 L.Ed. 2010.

■ The proviso attached to Section 601, supra, in 1959, was obviously for a specific purpose. As indicated in the reports contained in 2 U.S.Code Congressional and Administrative News, 86th Congress —First Session 1959, pp. 2530–2536, the amendment to this section was to prevent multiple withholdings from the wages of seamen who might be in ports of different states when they received their pay. Instead of being subject only to the withholding laws of their state of residence, or their home port, every state, local political subdivision or municipality having such power, could require withholding merely because the seaman happened to be in that jurisdiction when paid. In addition, the ship owner or operator, would be faced with an almost impossible task of complying with myriad state and local tax withholding laws.

■ In the case before us there appear no such problems. The members of the crews of the vessels here involved do not land at any port other than that of the City of St. Louis. They report for duty there and they leave their employment daily at the same place. The mere fact that at some time, while on duty, their vessel may cross the middle of the channel of the river would not place them in interstate commerce as a practical matter so far as their compensation and the payment thereof is concerned. Conceivably—and there is no evidence to the contrary—the boats could be so steered and maneuvered that they need never cross the middle of the channel. Their journey is purely for pleasure and amusement of the passengers. They leave St. Louis and return to St. Louis with no interruption of the voyage by mooring or anchoring at any other place. The withholding of earnings tax from wages of members of the crews would place no burden upon them or their employer other than that associated with any other wage earner or employer within the City of St. Louis. Considering interstate trade as a practical concept, the terms as used in Section 601 do not encompass the operations of the steamer Admiral and the motor vessel Huck Finn.

Streckfus Steamers, Inc., the plaintiff, defendant employees, who are also respondents, and the court below rely in large part upon the case of Cornell Steamboat Co. v. United States, 321 U.S. 634, 64 S.Ct. 768, 88 L.Ed. 978. This case in-

volved the meaning of "interstate transportation" used in the Interstate Commerce Act (Chap. 49, U.S.C.A.). Cornell contended it was not so engaged and that the Interstate Commerce Commission had no power to regulate. The facts disclosed that five per cent of its business was between the States of New York and New Jersey and that a substantial part of the remainder of their business was carried on in tows that moved over New Jersey waters, even though the freight was being moved from port to port in New York. Aside from the finding that five per cent was undoubtedly interstate transportation, the court also relied on the case of Missouri Pacific R. R. Co. v. Stroud, 267 U.S. 404, 45 S.Ct. 243, 69 L.Ed. 683. This case, like the earlier case of Hanley v. Kansas City Southern Railway Co., 187 U.S. 617, 23 S.Ct. 214, 47 L.Ed. 333, concerned regulation of railroads on point-to-point rates within the same state where the railroad line ran across a part of another state in its travel between these points. There, practical application of the law required that "interstate transportation" be interpreted to include such a pattern of travel so rates might be uniform and established as a whole.

It is interesting to note that in another case involving Cornell (People of the State of New York on the relation of Cornell Steamboat Company v. Sohmer, 235 U.S. 549, 35 S.Ct. 162, 59 L.Ed. 355), the court found that the portion of the transportation originating and terminating in New York was not interstate commerce, even though as to a part of the journey the tows passed over the territory of another state. This case involved taxation by the State of New York on gross earnings as to that part of Cornell's business conducted in New York. Although the doctrine there enunciated was later criticized and not followed in Central Greyhound Lines, Inc. v. Mealey, 334 U.S. 653, 68 S. Ct. 1260, 92 L.Ed. 1633, it is an example of an application of the doctrine that interstate commerce is a practical concept, not a technical one, and must depend upon the facts in each case.

Bearing upon this concept is the decision of Mr. Justice Holmes in Cincinnati, Portsmouth, Big Sandy and Pomeroy Packet Company v. Bay, 200 U.S. 179, 26 S.Ct. 208, 50 L.Ed. 428. The court there had before it the legality of a contract not to compete in transportation on the Ohio River between Ohio points for a period of five years. The Sherman Act (15 U.S.C.A. Sec. 1) declares every contract in restraint of trade or commerce among the several states to be illegal. In finding that the contract did not violate the Sherman Act, the court said: "It would be an extravagant consequence to draw from Hanley v. Kansas City Southern Ry., 187 U.S. 617, [23 Sup.Ct.Rep. 214, 47 L.Ed. 333] a case of a State attempting to fix rates over a railroad route passing outside its limits, that the contract was within the Sherman Act because the boats referred to might sail over soil belonging to Kentucky in passing between two Ohio points." (l. c. 200 U.S. 183, 26 S.Ct. 209).

When Missouri was admitted to the Union as a State, the Act of Congress authorizing the people of Missouri to form a constitution and state government, (3 U.S.Stat. 545; 1 V.A.M.S. 97; 3 V.A.M.S. Chap. 7, p. 211) set out the boundaries of the proposed state. At St. Louis where Missouri borders the State of Illinois, the boundary line is the middle of the main channel of the Mississippi River. However, the act goes further and gives to Missouri concurrent jurisdiction on the river. This has been construed to mean that the sovereignty of the State of Missouri, having accepted the act, extends anywhere on that river. Sanders v. St. Louis & N. O. Anchor Line, 97 Mo. 26, 10 S.W. 595, 597; cf. Gerhard v. Terminal Railroad Association of St. Louis, Mo., 299 S.W.2d 866, 869 [2, 3]; 49 Am.Jur., States, Territories, and Dependencies, Sec. 24, p. 244. We refer to this not to indicate that authority has vested in the City of St.

Louis as a political subdivision of the State of Missouri to override an act of Congress affecting interstate commerce, but, rather, as additional reason to find that the excursion-boat operation presented here by the facts is not an interstate operation within the meaning of Section 601. For these boats that leave and return to the port of St. Louis without interrupting their voyage remain at all times within the jurisdiction of Missouri, even though they, at times, cross the middle of the channel of the river.

The earnings tax of the City of St. Louis has previously been held to be a constitutional tax and not a burden on interstate commerce, even though the individual whose wages are subject to tax lives in another state. Arnold v. Berra, Mo., 366 S.W.2d 321. The individual defendant employees in the case before us, irrespective of their residence, work on boats whose business operations under the evidence are purely intrastate. The exemption provided members of the crew under Section 601, 46 U.S.C.A., applies to a vessel which is engaged in interstate trade. The exemption provided by this section may not be relied on by any employees of plaintiff who work on the steamer Admiral and motor vessel Huck Finn or by plaintiff, as long as these vessels remain in the excursion trade described in this opinion. This rules the case and we will not attempt to determine whether certain employees are, or are not, members of the crews on these respective vessels within the meaning of Section 601.

For the reasons given, the judgment of the circuit court is reversed. The case is remanded with directions to deny plaintiff's petition. In accordance with the affirmative matters pleaded and the prayer contained in the answer of defendants, City of St. Louis and John K. Travers, Collector of Revenue of the City of St. Louis, the court below is further directed to adjudge and decree that all employees of plaintiff who receive their compensation as a result of services performed in connection with the operation of the excursion boats, the steamer Admiral and the motor vessel Huck Finn, are subject to the provisions of Sections 145.010 to 145.120, incl., Revised Code of St. Louis, the ordinances of the City of St. Louis imposing an earnings tax, and that the plaintiff is further subject to the provisions of the ordinance which requires it to withhold earnings taxes from the wages of said employees, Section 145.060, Revised Code of St. Louis.

PER CURIAM.

The foregoing opinion by WEIER, C., is adopted as the opinion of this Court. Accordingly, the judgment of the circuit court is reversed. The case is remanded with directions to deny plaintiff's petition. In accordance with the affirmative matters pleaded and the prayer contained in the answer of defendants, City of St. Louis and John K. Travers, Collector of Revenue of the City of St. Louis, the court below is further directed to adjudge and decree that all employees of plaintiff who receive their compensation as a result of services performed in connection with the operation of the excursion boats, the steamer Admiral and the motor vessel Huck Finn, are subject to the provisions of Sections 145.010 to 145.120, incl., Revised Code of St. Louis, the ordinances of the City of St. Louis imposing an earnings tax, and that the plaintiff is further subject to the provisions of the ordinance which requires it to withhold earnings taxes from the wages of said employees, Section 145.060, Revised Code of St. Louis.

BRADY, P. J., and DOWD, J., concur.

WOLFE, J., not participating.