**Glen M. NELSON, Plaintiff,**

v.

**Patrick J. FRAWLEY, Jr., Defendant.**

United States District Court
S. D. New York.

Aug. 3, 1960.

Markewich, Rosenhaus & Beck, New York City, Samuel Beck, New York City, of counsel, for plaintiff.

Lipper, Shinn & Keeley, New York City, Aaron Lipper, Richard B. Dannenberg, New York City, of counsel, for defendant.

METZNER, District Judge.

Defendant moves for summary judgment in this action which alleges two claims, one for conversion and the other for breach of contract.

Plaintiff had a conversation with defendant in California in 1951, looking toward his employment as a salesman by a corporation in which the defendant owned a majority of the outstanding stock. The corporation was engaged in the manufacture and sale of the "Paper Mate" pen which had been on the market for a short period of time. Plaintiff claims that as a condition of his employment he wanted one-third of the stock of the corporation and its affiliated and subsidiary companies, a salary, expense account and an override commission. Defendant was unwilling at the time to give plaintiff a written contract which plaintiff desired, but wanted plaintiff to first "prove" himself. As a result plaintiff took over the Philadelphia territory on a trial basis. Defendant denies that there ever was any mention of giving plaintiff a stock interest in the corporation.

Two months later plaintiff returned to California and had another conversation with defendant in which it was agreed that plaintiff would go to New York starting in January 1952 on a permanent basis. In April 1952 plaintiff received a written contract dated April 1, 1952, providing for a salary of $1,000 a month, $200 a month for entertainment expenses, reimbursement for travel expenses and an override of ½% to 1½% on sales over $50,000. No mention was made of stock being given to the plaintiff. The agreement further provided:

"This agreement supersedes and cancels all previous employment agreements heretofore made and entered into between the parties, Employee and Employer and Employee and Patrick J. Frawley, Jr."

Plaintiff signed and returned this agreement, but before doing so he wrote defendant a letter dated April 10, 1952, acknowledging receipt of the contract and saying "The contract is alright with one exception and that is the basic salary."

However, plaintiff claims that before he wrote this letter he telephoned defendant in Los Angeles and asked why no reference was made in the contract to the stock. He says defendant omitted any such reference because defendant didn't want others connected with the corporation to know of the arrangement. The letter of April 10, 1952 makes no reference to this telephone conversation.

Aside from this conversation plaintiff relies on two letters dated March 22, 1952 and April 15, 1952 which he claims he sent defendant. The first letter, written before receipt of the contract, says:

"Hope you received the signature cards from Chase and National City Banks as I sent them out to you immediately upon receiving your telegram.

"As you will probably remember, at one of our first meetings I expressed the desire of being a stockholder and officer of the Frawley Corp. This feeling is even greater now than before and I hope that it is possible that some consideration can be given me when the Eastern Frawley Corp. is set up."

Plaintiff was made vice president in charge of sales of this eastern corporation when it was set up. The second letter, dated after receipt and signing of the contract and plaintiff's letter of April 10, 1952, says:

"Our company is rapidly growing larger and it is obvious that I have fulfilled my end of the deal and feel that the stock that you promised me at Hody's should now be forthcoming.

"I am sure you are very busy but since you did not answer my letter of March 22nd I thought I would send you this reminder—because as you know, I would never have uprooted my family from the West Coast to move East just to receive a salary and commission, without a substantial stock participation."

This letter would be inadmissible on the trial to prove the existence of the contract as alleged by plaintiff because of its self-serving nature.

In March 1954 plaintiff purchased from defendant, for $9,600, 300 shares of stock of the Frawley Manufacturing Corporation, affiliated with the employing corporation. These shares represented less than a 1% interest in the corporation and were paid for by plaintiff's note to defendant on which he subsequently made a part payment of $600.

In early December 1954 the employment of plaintiff by the corporation was terminated, although plaintiff pursuant to a written agreement continued to receive $1,000 a month for an additional 6 months. Plaintiff resigned as vice president of the eastern corporation, and he paid defendant the $9,000 he owed on the purchase of the Frawley Manufacturing stock. Simultaneously defendant purchased the stock from plaintiff for $33,489, giving plaintiff a $24,000 profit in 9 months. Plaintiff also signed a general release of all claims against defendant and all the various corporations. All of these transactions took place on the same day, although plaintiff says that when he was given the release to sign he left his office and went across the street to a telephone booth and called defendant in California. He asserts that defendant told him to sign the release and that it would not affect their agreement. Plaintiff knew that defendant was trying

to sell the corporation and that he would not be included in the new set-up.

Several months later defendant sold his stock to the Gillette Company for $15,-000,000 in a widely publicized transaction. Two years thereafter plaintiff instituted this suit to recover $5,000,000.

■ I can find no reason why this general release is not a bar to plaintiff's claim. Both parties agree that the law of New York applies as to the effect of the release. Nothing has been shown, alleged or claimed in the nature of fraud, incapacity or special circumstances to permit a variance of the terms of the release. Lucio v. Curran, 2 N.Y.2d 157, 159, 157 N.Y.S.2d 948, 139 N.E.2d 133; Nahtel Corp. v. West Virginia Pulp & Paper Co., 2 Cir., 1944, 141 F.2d 1; Gaetjens v. Gaetjens, Berger & Wirth, D.C.S.D.N.Y.1957, 151 F.Supp. 701. The claim alleged by plaintiff clearly existed prior to the giving of the release. It was inextricably bound up with his employment. He has so testified in his deposition and further attempted to fortify his claim by referring to his letter of April 15, 1952 and alleged subsequent conversations. Therefore, the exception to the general rule as to the bar of the release enunciated in Simon v. Simon, 274 App. Div. 447, 84 N.Y.S.2d 307, is not applicable.

■■ Furthermore, the documentary evidence does not sustain plaintiff's version of the terms of his employment. The agreement of April 1, 1952 is a fully integrated agreement. While parol evidence is admissible to disprove integration, it may not vary the terms of what has been written. Laskey v. Rubel Corp., 1951, 303 N.Y. 69, 100 N.E.2d 140; Farmer v. Arabian American Oil Company, 2 Cir., 1960, 277 F.2d 46. Here the parties have expressly stipulated that the written agreement supersedes and cancels all previous employment agreements between them, and parol evidence may not vary this stipulation.

Motion granted. Settle order.