**KING FISHER MARINE SERVICE, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 569–85C.

United States Claims Court.

Jan. 24, 1989.

Harrell Z. Browning, Corpus Christi, Tex., Atty. of Record, for plaintiff.

Howard Lipper, Washington, D.C., with whom was Asst. Atty. Gen. John R. Bolton, for defendant.

## OPINION

REGINALD W. GIBSON, Judge:

*Introduction*

The present action is before the court on the United States' (government or defendant) motion for summary judgment based upon the affirmative defense of accord and satisfaction, and plaintiff's cross-motion. Plaintiff, King Fisher Marine Service, Inc. (King Fisher) filed a complaint in this court on September 30, 1985, alleging entitlement to an equitable adjustment for modifications (change orders) made by the government to contract no. DACW64–83–C–0041 (the contract), which required King Fisher to dredge a segment of the Gulf Intracoastal Waterway in Texas.

Jurisdiction of this court is based on the Contract Disputes Act, 41 U.S.C. § 601 *et seq.*, and 28 U.S.C. § 1491.

After careful consideration of the merits of each party's contentions, both in briefs and at oral argument, the court is constrained to grant defendant's motion for summary judgment and to deny plaintiff's cross-motion.

*Statement of Facts*

King Fisher, as the low bidder, was awarded government contract No. DACW64–83–C–0041, for the dredging of Gulf Intracoastal Waterway, Texas, Mile 297 to High Island in Jefferson, Chambers, and Galveston Counties, Texas, on June 24, 1983. Under said contract, King Fisher was to be paid $1,170,560.00. The contract also explicitly provided that modifications were unilaterally permitted to be made by the contracting officer on behalf of the United States. Construction began under the contract on October 13, 1983.

On February 3, 1984, the contracting officer ordered a change in the construction contract under General Provision # 3, the contract provision which provides for such modification. This modification required King Fisher, with respect to Disposal Areas Numbers 22, 23, 24, and 25, to make the following changes:

1. Disposal Areas Nos. 22, 23 and 24
 a. Shift the alignment of all perimeter levee construction, exclusive of the front levee adjacent to the waterway, approximately 6 feet to the interior of the disposal area to a position which abuts the existing levee's interior edge of the crown.

 \* \* \* \* \* \*

2. Disposal Area No. 25

 \* \* \* \* \* \*

 b. Provide 1 on 3 or flatter side slopes on the constructed borrow ditch between levee stations 20+00 and 44+25. Material excavated from providing the side slopes on the borrow ditch shall be placed within the borrow area.
 c. Delete all fence repairs and construction.

This change was incorporated into Change Order FO–2, dated February 14, 1984, which was submitted to King Fisher by the contracting officer, who requested that King Fisher submit a proposal incorporating the changes. King Fisher submitted such a proposal on March 8, 1984, but was unable to reach an agreement with the contracting officer as to the price to be paid for such changes. Due to their inability to agree on an amicable price for such work, King Fisher submitted a formal claim to the contracting officer in the amount of $142,033.08 and a 29–day extension.

Performance under the contract was completed on October 28, 1984, while the claim was still pending. The contracting officer, notwithstanding, subsequently issued a decision denying King Fisher's claim on January 21, 1985.

The parties continued to negotiate a price for the items in the change order, however, and on April 2, 1985, entered into an agreement with respect to same whereby King Fisher agreed to accept the sum of $33,-388.00 for all of the work performed under the change order. Said agreement enumerated, in great detail, the subject matter of the contract items encompassed therein. That is to say, the language of the modification agreement was in all material particulars identical to the language in the FO–2 change order. It also contained operative language indicating that the compensation paid, *supra,* was in full settlement of all claims. Defendant's Motion for Summary Judgment (DMSJ) Appendix at 6.

Because the contractor refused to grant any further remuneration to plaintiff, in spite of its formal claim, King Fisher filed a complaint in this court on September 30, 1985, alleging that the government failed to make an equitable adjustment for the unilateral changes it ordered. Said complaint prays for $142,033.08 plus interest for additional costs incurred by King Fisher in performing under the contract modification and a 29–day extension, retroactive, to the time within which King Fisher had to complete performance under the contract.

The government has moved for summary judgment on the grounds that any and all of King Fisher's claims with regard to the modification (change order) are barred by the doctrine of accord and satisfaction. King Fisher has cross-moved for summary judgment asking this court to hold that its claim is not barred by said doctrine.

*Contentions of the Parties*

*Defendant*

In support of its motion for summary judgment, the government's argument is,

quite simply, that King Fisher's claims filed in this court are identical to those which were the subject matter of an accord and satisfaction, signed by both parties, which expressly acknowledges compensation in full. Therefore, argues the government, King Fisher's claim is forever barred by said doctrine, and summary judgment is appropriate.

*Plaintiff*

King Fisher, in opposition to defendant's motion for summary judgment and in support of its cross-motion, argues that in accepting the $33,388.00 in settlement, it previously expressed an intent to reserve certain portions of the claim (certain items in the change order) for later resolution. As evidence of such an intent, plaintiff collaterally relies upon three letters dated November 9, 1984 (Ex. 14, Pltf's Pre–Trial Submission), February 18, 1985 (Ex. 18, Pltf's Pre–Trial Submission), and April 3, 1985, one day after the settlement agreement with the government had been executed (Ex. 13, Pltf's Pre–Trial Submission). According to plaintiff, these three letters collectively evidence an *express* reservation of its rights with regard to a substantial portion of the items in the change order. Furthermore, says plaintiff, the parties also expressly reserved $100 from the settlement in order to preserve the existing claims by keeping the contract open, as contemplated in the letters.

Therefore, as plaintiff concludes, the settlement agreement entered into by the parties was merely a *partial,* not a full, settlement agreement. Plaintiff, therefore, cross-moves for summary judgment that its alleged reserved claims are not barred by accord and satisfaction.

*Issue Presented*

In ruling on the parties' motions, the court must herein determine—(i) whether King Fisher's judicial claim(s) for an equitable adjustment are forever barred by the doctrine of accord and satisfaction because the parties entered into a settlement agreement whereby defendant paid $33,-388.00 to plaintiff for all costs incurred in performing the modifications; and (ii) whether said agreement contained an un-

ambiguous provision stating that said amount represented "compensation in full."

*Discussion*

A. *Introduction*

As both parties in this action have moved for summary judgment, the court begins its discussion with a brief overview of the pertinent requirements of RUSCC 56. The moving party on such motion must show, by "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, ... that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." RUSCC 56(c). The non-moving party, in order to defeat the initiating motion, must then, of course, affirmatively *show* the existence of a genuine issue of material fact in dispute. RUSCC 56(c). To do so, the non-moving party may not merely assert bland unsupported allegations and conclusions, but must present specific and credible facts that either tend to establish all of the necessary elements of its cause of action or raise genuine issues of material fact relative to its cause of action. RUSCC 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Within the framework of the foregoing criteria, the court will first discuss the applicability of the parol evidence rule to the parties' contentions regarding the scope of the release provision contained in the FO–2 modification agreement. Finding that the parol evidence rule renders King Fisher's contentions regarding the FO–2 modification agreement untenable, the court next discusses the inadequacy of plaintiff's evidence proffered in support of its contentions, even assuming such evidence could properly be considered by the court.

Finally, the court addresses the question —what effect does the accord and satisfaction (P00003) have on plaintiff's claim? The court concludes that, under the doctrine of accord and satisfaction, King Fisher may not maintain this action.

234

**B. *Scope of the Modification Agreement***

The parties' primary dispute involves the scope of the subject matter of the P00003 modification agreement, *i.e.*, the accord and satisfaction. Specifically, the threshold operative question is—whether the same items that were the subject matter of and embraced by the accord and satisfaction are identical to all of the precise claims asserted by plaintiff regarding the equitable adjustment stemming from the work required to be performed pursuant to Change Order FO–2. Pertinent to the foregoing, the release provision in that agreement states as follows:

> It is understood and agreed that, pursuant to the above, the time for performance remains unchanged and the contract cost is increased by the amount of $33,-388.00. *This modification constitutes compensation in full on behalf of the contractor and its subcontractors and suppliers for all costs and markups directly or indirectly attributable to the changes ordered herein, for all delays related thereto and for performance of the changes within the time stated.*

DMSJ, Appendix at 6 (emphasis added).[1]

⬛ King Fisher attempts to contradict the clear import of the foregoing language by arguing that it does *not* apply to *all* of its claims arising under the FO–2 change order, but only to a portion of such claims. In this connection, it states that:

> [P]ursuant to an agreement between plaintiff and defendant the claim was divided into two parts. The settlement agreement entered into on April 2, 1985 was a settlement of only the first part of the claim.

Pltf's Response to Defendant's Motion for Summary Judgment at 1. As evidence thereof, King Fisher relies upon three letters that it addressed to the Department of the Army (DOA), one of which was written the day after it executed the accord and satisfaction. By such documents alone, plaintiff seeks to vary the clear language in said accord and satisfaction. The parol evidence rule, however, prevents the court from considering evidence of prior dealings, on a motion for summary judgment or otherwise, when put forth for the purpose of varying the meaning of clear, unambiguous language. *See Bistline v. United States*, 226 Ct.Cl. 282, 640 F.2d 1270, 1274 (1981) (citing *inter alia In Re Norway and United States*, 145 Ct.Cl. 470, 483, 172 F.Supp. 651, 659 (1959)). Try as it may, the court is unable to find any ambiguity in this provision. In reading the terms of this agreement, the court must give ordinary words their ordinary meaning. *See ITT Arctic Services, Inc. v. United States*, 207 Ct.Cl. 743, 752, 524 F.2d 680, 684 (1975). The words "compensation in *full*," "*all* costs," and "directly or indirectly related to the changes ordered herein" make clear the meaning of this provision that the contractor releases *all* of its claims regarding the work performed under the FO–2 change order and the accord and satisfaction. Furthermore, parol evidence may not be utilized by a party in order to *create* an ambiguity. *See Zim v. Western Publishing Co.*, 573 F.2d 1318, 1323 (5th Cir.1978). Therefore, because King Fisher's interpretation of the P00003 modification agreement language cannot reasonably be sustained without resorting to evidence of separate, prior communications, *i.e.*, outside of the accord and satisfaction itself, its argument must fail.

This is true even of the letter of April 3, 1985, which, although it was written subsequent to the execution of the contract, is, nevertheless, evidence of a prior dealing. *See Nelson v. Frawley*, 186 F.Supp. 66, 68 (S.D.N.Y.1960). In any event, the parol evidence upon which King Fisher hospitably relies can hardly be said to be of any aid to the court in resolving the issues favorable to plaintiff. The first such item is the letter of plaintiff dated November 9, 1984, addressed to the DOA, which states in pertinent part that:

> This is to advise you that I met with Mr. Herbie Maurer some months ago, and *he asked me to separate my FO–2 Change Order from the claim I have for extra work* on this above referenced job [the

---

**1.** This release provision is conspicuously absent from plaintiff's pleadings.

contract in question]. He said that if I would separate these, he would have Mr. Carlos Aguilar try to negotiate the FO-2 modification, so we would be paid for this portion of the work.

Ex. 14, Pltf's Pre–Trial Submission (emphasis added). The "separation" language, *supra*, relied upon by King Fisher does not contain, as King Fisher purports, a reference to a claim for work performed pursuant to the FO-2 change order being bifurcated. It should be understood that said letter purports to refer to *two* categories of claims—first, claims stemming from work performed pursuant to the change order, and second, the claim for "extra work" allegedly performed by plaintiff outside of that identified in the change order. Thus, said letter merely states that the claim of plaintiff *under the FO-2 change order*, *i.e.*, the *entire* claim under the FO-2 change order, was to be separated *from other claims* (*i.e.*, for extra work), the existence of which are neither within the items identified in change order FO-2 nor the items identified within the accord and satisfaction. Therefore, this proffered evidence not only does not support King Fisher's contention, it simply *disproves* its major thesis.

The second letter by plaintiff to the DOA, dated February 18, 1985, merely summarizes the problems and disputes the parties have experienced in implementing the changes specified in change order FO–2. *See* Ex. 18, Pltf's Pre–Trial Submission. The letter not only does not advance King Fisher's contention, *supra*, but it does not contain one scintilla of probative evidence that even tends to establish that its claims stemming from the FO-2 change order were, or were ever intended to be, bifurcated for settlement purposes.

Finally, the third letter from plaintiff to DOA, dated April 3, *1985,* states in its entirety:

I have received Modification No. P0003 [sic] (FO–2) on the above contract from the Galveston District, and it did not include the monies for the fence as agreed on by us in the presence of Mr. Herbie Maurer, at our last meeting in Galveston.

I have just talked to Mr. Maurer, and he has informed me to clear up the paperwork so you will have a letter on file. Therefore, I am writing to ask you to go ahead and pay us for the amount of the fence plus one-half of the monies you held out for the dirt that you claim ran under the fence.

Also, please hold out $100.00 on this estimate to leave the job open for the filing of the claim for *extra work.*

Ex. 13, Pltf's Pre–Trial Submission (emphasis added). While said letter does discuss a claim for monies with regard to the FO-2 change order that were not included in the modification agreement, this letter was written the day *after* the accord and satisfaction agreement was executed. Such a self-serving statement is, therefore, of little value to the court in determining the scope of the modification agreement which one might reasonably expect to have contained a reference to this alleged reservation. Moreover, it does not overcome the clear language of the release provision, which stated that *all* claims of the contractor related to the FO-2 change order were compensated for in full. *See United Telecommunications, Inc. v. American Television and Communications Corp.,* 536 F.2d 1310, 1318 (10th Cir.1976); *Sternberger v. United States,* 185 Ct.Cl. 528, 536, 401 F.2d 1012 (1968).

King Fisher also embraces the third paragraph of this letter, which states that $100 should be held back by the government, as evidence of an express reservation of its claims apart from those related to the FO-2 change order. Such reservations of a relatively nominal fee are commonplace in government contracts, and *only* serve to preserve a contractor's cause of action with respect to any claim involving a particular contract. This is not the issue postured by plaintiff. Rather, the issue here is not whether King Fisher may bring *any* claim against the government based upon the contract in question, but whether King Fisher may bring an action against the government based upon the items within the FO-2 change order where all of such

items were previously the subject of a concluded accord and satisfaction. In substance, what plaintiff is tacitly averring is that it reserved a portion of the claims, which are the subject matter of this complaint, from being resolved by the accord and satisfaction. However, inasmuch as no exceptions or reservations appeared within the accord and satisfaction, this contention, as evidenced by the letter, *supra,* is also unsupportive of King Fisher's argument.[2]

Therefore, the court must interpret the release provision of said agreement to be tantamount to a waiver of any other claims of King Fisher, if any exist, that are based upon the FO–2 change order. Such is the only reasonable interpretation, and is clearly and unambiguously expressed in the accord and satisfaction.

### C. *Accord and Satisfaction*

 The doctrine of accord and satisfaction operates to discharge or terminate an existing right. *See Chesapeake & Potomac Telephone Co. v. United States,* 228 Ct.Cl. 101, 654 F.2d 711 (1981) (citing 6 Corbin on Contracts § 1276 (1962)). "Discharge by accord and satisfaction 'means a discharge by the rendering of some performance different from that which was claimed as due and the acceptance of such substituted performance by the claimant as full satisfaction of his claim.'" *Brock & Blevins Co. v. United States,* 170 Ct.Cl. 52, 343 F.2d 951 (1965) (quoting *Corbin, supra,* § 1276). The operative elements of an accord and satisfaction are as follows: "Proper subject matter, competent parties, meeting of the minds of the parties, and consideration ... [and acceptance] of payment or performance in satisfaction of a claim or demand which is a bona fide dispute." *Nevada Half Moon Mining Co. v. Combined Metals Reduction Co.,* 176 F.2d 73, 76 (10th Cir.1949), *quoted in Brock & Blevins,* 170 Ct.Cl. at 59, 343 F.2d at 955.

 The court must now focus its attention on the P00003 modification agreement, executed by the parties on April 2, 1985,

and determine whether, pursuant to the doctrine of accord and satisfaction, King Fisher is precluded from maintaining its present action. There is no question that the P00003 modification agreement was executed by the same two parties now before the court, and that the government, by the terms of said agreement, paid $33,388.00 to King Fisher in satisfaction of the same work items identified in the government's change order FO–2. Therefore, two of the five elements of an accord and satisfaction, *i.e.,* proper parties and consideration, are met. Furthermore, with respect to the requirement that there has been a "bona fide dispute" as to the amount owed, the court notes that King Fisher submitted a proposed change in contract price for work performed pursuant to change order FO–2 in the amount of $45,230. *See* Ex. 7, Pltf's Pre–Trial Submission; Ex. 12, Deft's Pre–Trial Submission (Notes from the March 8, 1985 negotiations). After the parties met to negotiate a change in contract price pursuant to the FO–2 change order, they next executed the modification agreement for $33,388.00—$11,842 below King Fisher's proposal. Clearly, there existed a bona fide dispute as to the amount owed King Fisher.

The fourth element of an accord and satisfaction is a meeting of the minds.

> In order that a performance rendered by an obligor shall operate as a satisfaction of the claim against him, it must be offered as such to the creditor.... *There must be accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise.* If not so rendered, there is no accord, either executory or executed, for the reason that there are no operative expressions of agreement—no sufficient offer and acceptance.

*Chesapeake & Potomac Telephone,* 228 Ct.Cl. at 109, 654 F.2d at 716 (quoting

---

**2.** *Compare* Ex. 5, Pltf's Pre–Trial Submission *with* Ex. 6, Pltf's Pre–Trial Submission and Ex. 11, Deft's Pre–Trial Submission (the language of

the change order (Ex. 5) is virtually identical to that of the modification agreement (Exs. 6 and 11)).

*Corbin, supra,* § 1277); *see also Eldon Industries, Inc. v. Paradies & Co.,* 397 F.Supp. 535, 543 (N.D.Ga.1975).

In the case at bar, the parties sat down at a bargaining table in order to settle their disagreement. They then reduced their agreement to writing, which included the release provision, *supra,* stating that such "modification constitutes compensation in full on behalf of the contractor ... for all costs and markups directly or indirectly attributable to the changes ordered herein." Certainly, King Fisher could not have failed to appreciate the significance of such language within the context of the circumstances surrounding the execution of such an agreement. Nor is it reasonable to believe that it could have failed to understand that the $33,388.00 constituted an accord and satisfaction of all of its claims related to the items in the FO–2 change order. Accordingly, the court finds that the necessary "meeting of the minds," to enter into an accord and satisfaction, is present.

This leads the court to the fifth and final element of an accord and satisfaction, *i.e.,* proper subject matter. The heart of King Fisher's argument is that, as the P00003 modification agreement only embraced a portion of its claim related to the FO–2 change order, said modification agreement does not bar its claim here. In other words, the subject matter of said modification agreement is not the same as that of the complaint. Having found that the modification agreement's scope extends to *all* claims based upon the FO–2 change order,[3] the court must now examine King Fisher's complaint in order to determine whether it is in fact based solely upon the FO–2 change order and, consequently, subject to dismissal under the doctrine of accord and satisfaction.

King Fisher's complaint consists of 11 paragraphs, the first eight of which recite the events leading to September 30, 1985, the date the complaint was filed. Paragraph VII tells of "Modification No. FO–2 ... (hereinafter the 'Change Order')." No mention is made of any other change order.[4] Paragraphs IX and X aver jurisdictional requirements under the Contract Disputes Act, 41 U.S.C. §§ 601 *et seq.* King Fisher's cause of action, stated in paragraph XI only, is as follows:

> The *Change Order* required Plaintiff to incur additional costs and expenses in the amount of $142,033.08, which are itemized in Exhibit "D," and to extend the contract by 29 days. Accordingly, Plaintiffs are entitled to an equitable adjustment for these additional costs, expenses, and days pursuant to the Contract and 41 U.S.C. §§ 601, *et seq.* Plaintiff is also entitled to interest thereon under the terms of the Contract.
>
> WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment....

Plaintiff's Complaint at 6 (emphasis added).[5]

Against the above background, the court can only conclude that King Fisher's entire claim is based upon the FO–2 change order. As the subject matter of said change order was fully embraced by the P00003 modification agreement, which contained a release of King Fisher's claims based upon the FO–2 change order, King Fisher's claim is barred by an accord and satisfaction.

*Conclusion*

For the foregoing reasons, defendant's motion for summary judgment is granted and the plaintiff's cross-motion for summary judgment is denied. The Clerk shall

---

3. *See supra* note 2 at 9.

4. In fact, a second change order, referred to as "Modification No. FO–3," was issued by the government to King Fisher on April 10, 1984. *See* Ex. 15, Pltf's Pre–Trial Submission. However, the contract price was increased by $3,500, and the time for performance was extended by two days pursuant to an agreement between the two parties. *See* Exs. 15, 26, Pltf's Pre–Trial Submission; Ex. 7, Deft's Pre–Trial Submission. As the pleadings indicate no dispute related to this second change order, it is not relevant to the court's discussion herein.

5. The term "change order" was intended by plaintiff to mean the FO–2 change order. *See* Plaintiff's Complaint at 5:

> On February 14, 1984, the Resident Contracting Officer submitted Modification No. FO–2 to Plaintiff (hereinafter the "Change Order")....

enter judgment accordingly. Costs shall be assessed against plaintiff.

IT IS SO ORDERED.