**COMMERCIAL CONTRACTORS, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 648–89C.**

United States Claims Court.

April 14, 1992.

Richard D. Corona, San Diego, Cal., atty. of record, for plaintiff.

Ann L. Springer, Washington, D.C., with whom was Asst. Atty. Gen., Stuart M. Gerson, atty. of record, for defendant.

## MEMORANDUM OF DECISION

HARKINS, Senior Judge:

This case is before the court on defendant's motion for partial summary judgment. Oral argument was heard on April 9, 1992. At the close of argument, counsel were told the motion for partial summary judgment would be denied.

Plaintiff, Commercial Contractors, Inc., on August 25, 1987, was awarded a firm fixed price contract on a formally advertised IFB by the Army Engineers for reconstruction work at Libby–Army Airfield in Fort Huachuca, Arizona. The procurement was a total small business set-aside; the contract amount was $1,005,000. The work was to be commenced within 5 calendar days and completed within 180 days after receipt of the Notice to Proceed (NTP). The NTP was received on November 2, 1987, and contract work began on November 11, 1987. The reconstruction work was finished, and the project was accepted by the Government as substantially complete, on July 13, 1988. The total performance period was 253 days.

The contract documents were modified 12 times by P00001 through P00012. P00004 modified the contract to add both a time and a money change. All other modifications involved only a money change. P00006 through P00012 were made and dated in the period August 5 to September 20, 1988. Plaintiff was assessed $17,160 in liquidated damages for 44 days delay.

On April 20, 1989, the Final Payment Certificate of the Resident Engineer stated "the Government has no outstanding claims against the contractor in connection with this work," all modifications have been incorporated into the construction and completed, and "no further modifications are pending."

On May 9, 1989, plaintiff submitted a certified claim for 91 days delay in total amount of $74,481.06: (1) 41 days for late issuance of NTP, (2) 15 days for runway closure markings and temporary lighting, and (3) 35 days for failure to provide asphalt test results. The claim also sought refund of assessed liquidated damages.

Final closure of the contract was on June 30, 1989; the final contract price was $1,019,302. Both parties reserved rights as to the pending claim, as follows:

THIS FINAL PAY ESTIMATE DOES NOT PREJUDICE THE CONTRACTOR'S RIGHT TO PROCEED WITH IT'S CLAIM IN THE AMOUNT OF $74,481.06, SUBMITTED TO CONTRACTING OFFICER BY LETTER DATED 9 MAY 89. GOVERNMENT DOES NOT WAIVE ANY CLAIM IT MAY HAVE ARISING OUT OF THE SUBJECT MATTER OF THE CLAIM ACCEPTED BY THE CONTRACTOR.

On November 21, 1989, the contracting officer issued a decision that denied plaintiff's three delay claims. The decision, without explanation, ordered return of $17,160 for liquidated damages.

In this court, the amended complaint seeks $196,482 as damages for the three delay claims that were denied by the contracting officer, and for the assessment of liquidated damages. Discovery extended from April 16, 1990, to August 16, 1991. On September 11, 1991, defendant filed a motion for partial summary judgment that asserts the doctrine of accord and satisfaction bars plaintiff's impact delay claim for the runway closure markings and temporary lighting in P00002 (Mod. 2), and the impact delay claim for failure to provide timely the asphalt test results in P00006 (Mod. 6). Defendant's motion for partial summary judgment does not include plaintiff's claim for impact delay due to late issuance of the NTP.

Plaintiff asserts Mods. 2 and 6 involve only time and money costs for the changed work. Plaintiff contends that at no time

during negotiations for Mods. 2 and 6 was there any discussion of costs resulting from impact delays to unchanged work.

Defendant is a movant for summary judgment under RUSCC 56. Summary judgment is appropriate where there is a showing that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. A movant for summary judgment has the burden of showing the absence of genuine issues as to any material facts. *Adickes v. Kress,* 398 U.S. 144, 159, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). A complete failure of proof concerning an essential element of the nonmoving party's case entitles the moving party to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The movant's burden may be discharged by showing that there is an absence of evidence to support the non-movant party's case. *Sweats Fashions, Inc. v. Pannill Knitting Co.,* 833 F.2d 1560, 1563 (Fed.Cir.1987). Doubts concerning factual issues are to be resolved in the favor of the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

The scope and content of the doctrine of accord and satisfaction was examined in detail by the Court of Claims in *Chesapeake & Potomac Telephone Co. v. United States,* 654 F.2d 711, 228 Ct.Cl. 101 (1981) (acceptance and cashing of check tendered as "complete" payment not an accord and satisfaction), and in *Emerson–Sack–Warner Corp. v. United States,* 416 F.2d 1335, 189 Ct.Cl. 264 (1969) (ASBCA erred as a matter of law in finding an accord and satisfaction on facts that did not show a mutual agreement for settlement of a bona fide dispute).

■ "Accord and satisfaction" refers to a method to discharge and terminate existing rights. It provides a perfect defense in an action for enforcement of a previous claim, whether that claim was well founded or not. An accord is an agreement by one party to give or perform and by the other party to accept, in settlement or satisfaction of any existing or ma-

tured claim, something other than that which is claimed to be due. The process of making an accord is the same as in the case of other contracts.

■ The following elements are essential to an accord and satisfaction: (1) proper subject matter; (2) competent parties; (3) resolution of a bona fide dispute between the parties; (4) meeting of the minds of the parties; and (5) consideration.

Plaintiff's fixed price contract contained the standard required clauses in Army Engineer construction contracts for work inside the United States, including Changes (FAR 52.243–4), and Suspension of Work (FAR 52.212–12). The Changes clause authorizes an equitable adjustment for changes that cause an increase or decrease in the cost of or the time required for work under the contract, "whether or not changed by any such order." FAR 52.243–4, subsection (d). The Suspension of Work clause does not authorize an equitable adjustment for any delay "for which an equitable adjustment is provided for or excluded under any other term or condition of this contract." FAR 52.212–12, subsection (b).

Mods. 2 and 6 were on standard forms. Mod. 2 was signed by the contracting officer on February 16, 1988, and by plaintiff on February 23, 1988; Mod. 6 was signed by the contracting officer on August 5, 1988, and by plaintiff on August 16, 1988. Mod. 2 provided for a price increase of $3,910; and Mod. 6 provided for a price decrease of $8,723. In both, contract performance time remained unchanged. Mod. 2 included the following provision:

> It is further understood and agreed that this adjustment constitutes compensation in full on behalf of the contractor and its subcontractors and suppliers for all costs and markup directly or indirectly attributable to the change ordered, for all delays related thereto, and for performance of the change within the time frame stated.

Mod. 6 included the following provision:

> It is understood and agreed that this adjustment constitutes compensation in

full on behalf of the contractor and its subcontractors and suppliers for all costs and markup directly or indirectly attributable to the change ordered, for all delays related thereto, and for performance of the change within the time frame stated.

Defendant contends that these provisions explicitly address all costs relating to the changes, including impact delay costs in unchanged work. Defendant reads too much into Mods. 2 and 6. The quoted language is a standard provision recommended for use in modifications under the Changes clause. It is a recital of the Changes clause language that brings delays in unchanged work within the scope of equitable adjustments authorized. *See Gallup Construction Co.,* AGBCA No. 283, 72–2 B.C.A. (CCH) ¶ 9522. The standard provision may be used relative to direct and indirect costs that apply only to changed work, or, if the contracting officer and the contractor have so negotiated, it can be used to include delay or standby costs in the unchanged work. *See Quaker Elevator Co.,* PSBCA No. 324, 78–1 B.C.A. (CCH) ¶ 12965.

Modifications to adjust for changes during the course of performance are not independent agreements to be construed in isolation. Modifications made in the context of on-going contract administration, unless a broader scope is made explicit, relate to changed work only. Agreement as to the costs for the changed work itself, in the absence of express negotiations, does not establish an accord and satisfaction for resulting impact delays on unchanged work.

The meaning of the terms in the modification, and the effect of the modification on the overall contract obligations of the parties, should be considered in the context of the entire contract. All circumstances surrounding the negotiations for the modifications need to be examined.

Modification agreements generally are not considered to be independently conclusive evidence that the parties intended that the agreement include impact costs.

Even strong evidence in the modification agreement that it constitutes the entire adjustment due the contractor ordinarily is not considered independently dispositive. *NRM Corp. v. Hercules, Inc.,* 758 F.2d 676, 682–83 (D.C.Cir.1985).

Plaintiff argues that Mods. 2 and 6 apply only to costs applicable to the changed work. Plaintiff points out that both Mods. 2 and 6 by their terms involve only a change in price. In Mod. 2, additional time required to perform the changed work was minimal. In Mod. 6, the adjustment reduced the price of asphalt in-place as of December 29, 1987, and time was not relevant to that change. Both modifications were centered on price, and additional time directly attributable to the changed work was unnecessary. Plaintiff's construction of the scope of the phrase "for all delays related thereto" in the Army Engineers' standard provision in Mods. 2 and 6 is reasonable. When the same language may be cited as reasonable support for each party's contentions, the contract is ambiguous.

A naked recital of Changes clause coverage in the standard provision, as relied upon by defendant, is not sufficient to establish an accord and satisfaction of both claims for the changed work and claims for impact on unchanged work. There must be a showing of the elements essential to an accord and satisfaction. This can most readily be accomplished by express language in the modification agreement that without ambiguity establishes a meeting of the minds. In the absence of express language in the modification agreement itself, the elements may be established by other records, affidavits or testimony. When the facts are appropriate for such a showing, an accord and satisfaction may be established in summary judgment procedures. *See King Fisher Marine Service, Inc. v. United States,* 16 Cl.Ct. 231, 236 (1989); *Spirit Leveling Contractors v. United States,* 19 Cl.Ct. 84, 92 (1989).

To obtain summary judgment on an accord and satisfaction, the motion papers must include information sufficient

to define the subject matter and the scope of the negotiations for the contract modification. Such a showing was not made in defendant's motion papers. There is no showing of what plaintiff was requested to negotiate as to time and cost with respect to Mods. 2 and 6. For Mod. 6, the contracting officer requested a proposal in a RFP dated June 7, 1988. This RFP is not included in the record. As to Mod. 2, there is no information about a comparable written or oral request for plaintiff's time or cost proposal.

Asphalt placement stopped, pursuant to contract specifications, on December 29, 1987, because of noncompliance with quality control standards. New testing procedures were agreed upon, and the results of defendant's laboratory tests were communicated to plaintiff on March 9, 1988. Plaintiff's new asphalt design was approved March 18, 1988. There is no information in the motion papers relative to the time plaintiff restarted asphalt placement.

Information that would show the content of the negotiations that resulted in Mod. 2 is not included in the motion papers. Relative to Mod. 6, defendant did include excerpts from depositions of representatives of the contracting officer made in April 1991, and a resume of negotiations dated July 18, 1988, relative to negotiations on July 13, 1988. The resume includes the following paragraph:

It was determined that the negotiated net decrease in the amount of <$8,723.00> including overhead, profit and verified bond premium, was considered acceptable. The negotiated amount includes adjustment in price for all costs including impact, extended field overhead and related G & A home office overhead costs.

This information, without more, in the light of plaintiff's affidavit that impact costs were not involved in the negotiations on Mod. 6, is not sufficient to establish that Mod. 6 represents a meeting of the minds on the disputed matter.

In this case, the content of negotiations that led to Mods. 2 and 6 is in dispute. Such a dispute in fact is material to an accord and satisfaction. The motion papers do not establish the absence of a genuine issue of material fact, or that there is an absence of evidence to support the non-movant's case. Accordingly, defendant's motion for partial summary judgment must be denied.

A ruling on defendant's motion for partial summary judgment, and a schedule for further proceedings in this case is contained in a separate order filed this date.