AXA S.A., ProlecGE, S. de R.L. de C.V., and Prolec, S.A. de C.V. Plaintiffs

v.

UNION PACIFIC RAILROAD COMPANY, Defendants.

No. CIV.A.L–01–166.

United States District Court, S.D. Texas, Laredo Division.

March 28, 2003.

Stephen Paul Carrigan, Sydow Korman-ik et al, Houston, TX, Raymond L Thomas, Jr, Kittleman Thomas et al, McAllen, TX, for AXA, S.A. de C.V., Prolec–GE, S. de R.L. de C. V., Prolec, S.A. de C.V., plaintiffs.

Paul W Nimmons, Jr, Houston, TX, for Union Pacific Railroad, Union Pacific Railroad Company, defendant.

### Memorandum and Order

KAZEN, Chief Judge.

Pending is a Motion for Summary Judgment by Defendant Union Pacific Railroad Company (Docket No. 17). Plaintiff responded on August 26, 2002 (Docket No. 23)[1]. Almost a month later, Plaintiff filed a motion to compel mediation, to postpone submission of the summary judgment motion, and to file an amended response. (Docket Nos. 25, 26). The Court declined to compel mediation (Docket No. 30). The requested additional discovery pertained to the issue of whether the contractual liability described in the bill of lading trumped the liability provisions of the Carmack Amendment. Because of the disposition of this case on a different ground, the Plaintiff's motions are DENIED. For reasons hereinafter discussed, Union Pacific's motion is GRANTED.

### I. Background

The present action commenced on October 1, 2001, when Prolec–GE filed suit against Union Pacific in the 406th District Court of Webb County, Texas. Prolec sought to recover damages to an electrical transformer in 1999, while the transformer was being transported by Union Pacific from Laredo, Texas, to its destination in Ackerman, Mississippi. The applicable bill of lading, signed by the Plaintiff, purported to limit Union Pacific's liability by incorporating Union Pacific Tariff No. UPCQ 7486.053. That tariff stated that the agreement was a contract under 49

---

1. The original state court petition and all subsequent filings contain the names of the several Plaintiffs listed in the heading above, but always followed by the parenthetical (collectively "Prolec–GE"). All pertinent documents refer only to Prolec GE. Accordingly this memorandum will refer to a singular Plaintiff with the understanding that it applies to all named Plaintiffs.

U.S.C. § 10709 and that Union Pacific's maximum liability for the goods in transport was $50,000 per rail car.

Plaintiff notified Defendant of the damage to its cargo generally on December 10, 1999, and made a specific monetary claim for $224,371.00 on July 31, 2000. Defendant acknowledged receipt of this claim in a letter dated August 15, 2000. That letter specifically mentioned a $50,000 limit on Defendant's liability. On December 21, 2000, Union Pacific provided Plaintiff a check for $50,000, and again stated that this was the limit of its liability. Plaintiff cashed this check, but continues to seek the remainder of its claimed damages.

On July 26, 2002, Union Pacific moved for summary judgment on the ground that it had limited its liability to the Plaintiff under the original bill of lading, and that it had fulfilled its obligation. In the alternative, Defendant argues, among other things, that an accord and satisfaction has been achieved on this claim. This memorandum addresses the latter argument.

II. Accord and Satisfaction

■ All claims arising out of contracts, express or implied, irrespective of their subject matter, may be the subject of an accord and satisfaction, provided such contracts are not illegal or void. 1 AM. JUR. 2D Accord and Satisfaction § 6 (2002); *see also Ostrow v. United Business Machines,* 982 S.W.2d 101, 104 (Tex.Ct.App—Houston [1 Dist.] 1998, no writ). Neither party cites cases specifically addressing an accord and satisfaction in the context of the Carmack Amendment, but no decision in this Circuit has prevented such a defense. *But see, Prince v. United Van Lines, Inc.* 1997 WL 53121, *3 (N.D.Tex. Feb.4, 1997) (*stating,* "it is at least questionable whether United is entitled to utilize the common law defense of accord and satisfaction since the Carmack Amendment pre-empts state law.").

■ One concern would be with § 11706(c)(1) of Carmack, which states that "a rail carrier may not limit or be exempt from liability imposed by [this amendment]." The Supreme Court, in a case involving a similar prohibition on exemption from liability under the Federal Employers' Liability Act[2], stated that "it is obvious that a release is not a device to exempt from liability but is a means of compromising a claimed liability." *Callen v. Pennsylvania R. Co.* 332 U.S. 625, 68 S.Ct. 296, 298–299, 92 L.Ed. 242 (1948). The use of releases in FELA claims has been consistently permitted. *Babbitt v. Norfolk & Western Ry. Co.,* 104 F.3d 89, 93 (6th Cir.1997); *Wicker v. Consolidated Rail Corp.,* 142 F.3d 690, 697 (3rd Cir. 1998). The Western District of Missouri, following this logic, held that a release is merely the settlement of a disputed claim and not an attempt to exempt the railroad from liability under the Carmack Amendment. *Arnold Milling Co. v. Commodity Credit Corp.,* 81 F.Supp. 889 (W.D.Mo. 1948). The Fourth Circuit also apparently found no conflict between the existence of a contract under Carmack and the defense of accord and satisfaction. *Masonite Corporation v. Norfolk and Western Railway Company,* 601 F.2d 724, 728–729 (4th Cir. 1979). While it is true that the Carmack Amendment preempts state law regarding regulation and limitation of liability in commercial transportation cases, accord and satisfaction has been used in other instances where federal law also controls disputes and claims. *See e.g. McLain Plumbing & Electrical Service, Inc. v. United States,* 30 Fed. Cl. 70 (1993) (dis-

---

**2.** "Any contract, rule, regulation, or device whatsoever, the purpose or intent of which shall be to enable any common carrier to exempt itself from any liability created by this chapter, shall to that extent be void." 45 U.S.C. § 55.

cussing accord and satisfaction in government contracts); *International Union, United Auto., Aerospace, and Agr. Implement Workers of America (UAW) v. Yard–Man, Inc.*, 716 F.2d 1476, 1487 (6th Cir. 1983) (discussing accord and satisfaction in organized labor contracts). The Court concludes that accord and satisfaction is a permissible defense to a Carmack Amendment claim.

Although neither party cites to it, Texas has adopted the Uniform Commercial Code's ("UCC") provisions on accord and satisfaction, which codify the common law doctrine. Tex. Bus. & Com.Code Ann. § 3.311 (Vernon 1994) ("the Code"). This section requires that a person in good faith tender an instrument to the claimant as full satisfaction of the claim, that the amount of the claim was unliquidated or subject to a bona fide dispute, and that the claimant obtained payment of the instrument. *Id.* In addition, "the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication contained a conspicuous statement to the effect that the instrument was tendered in full satisfaction of the claim." *Id.* at § 3.311(b).

■ The parties cite solely Texas caselaw, which provides essentially the same requirements found in the Code. In the absence of controlling federal law principles, the Court may look for guidance to general common law principles, including the substantive law of the states. *International Union*, 716 F.2d at 1487. In *Jenkins v. Henry C. Beck Co.*, 449 S.W.2d 454, 455 (Tex.1969), the Texas Supreme Court stated that for the defense of accord and satisfaction to prevail, there must be a dispute about the amount owed and an unmistakable communication to the creditor that the tender of the reduced sum is upon the condition that acceptance will satisfy the underlying obligation.

■ In this case, Defendant offered $50,000 to the Plaintiff in settlement of its claim, describing this sum as the limits of its liability under the contract. Plaintiff, citing *Jenkins*, disputes that the letter accompanying the $50,000 was "unmistakable" in its declaration that acceptance of the check would extinguish all claims under the account. In *Jenkins*, there was a failure to present an unmistakable communication to the creditor because numerous amounts were disputed and there were multiple interpretations for the alleged accords. *Jenkins*, 449 S.W.2d at 456 (notations on three progress payments could have multiple meanings regarding either the work completed to that point or the final amount owed); *see also Metromarketing Services, Inc. v. HTT Headwear, Ltd.* 15 S.W.3d 190, 198 (Tex.App.-Houston [14th Dist.] 2000, no writ) (refusing to find accord and satisfaction because the language "paid in full" could have been interpreted multiple ways due to the twenty-four outstanding invoices).

In the present case, there was only one amount in dispute. The letter accompanying payment to Plaintiff stated that the claim had been accepted for payment and that the enclosed check constituted the limit of Defendant's liability. The only reasonable interpretation of this statement is that the check was offered in full settlement of the disputed claim. Similar facts in other single-claim disputes were found to result in an accord and satisfaction. *See Indiana Lumberman's Mutual Insurance Company v. State*, 1 S.W.3d 264, 268 (Tex. App.—Fort Worth, 1999), *reh'g overruled* (Oct. 20, 1999), *review denied* (Oct. 19, 2000) (finding that the language "for the purpose of settling the matter" was evidence of an "unequivocal offer to settle all...claims...and is not susceptible to any other interpretation."); *see also, City of Mesquite v. Rawlins*, 399 S.W.2d 162, 168 (Tex.Civ.App.1966, writ ref'd n.r.e.)

(holding statement that a party "was tendering the check for the payment of the judgment" could constitute an accord even without utilizing the terms "in full settlement" or "in full satisfaction".)

▮ Plaintiff disputes that there was a meeting of the minds regarding the creation of a new contract. Where a contract is unambiguous, that instrument alone will be deemed the express intent of the parties. *Fuller v. Phillips Petroleum Co.*, 872 F.2d 655, 657 (5th Cir.1989). A court will not look beyond the four corners of the instrument to find a different or hidden intent. *Id.* Texas caselaw agrees that a creditor's mental process is not controlling. If from the facts a creditor "obviously should understand that a check is tendered in full satisfaction," then an acceptance will be binding "regardless of his actual understanding." *Roylex, Inc. v. S & B Eng'rs, Inc.*, 592 S.W.2d 59, 60 (Tex.Civ.App.-Texarkana 1979, no writ), *quoted favorably in Indiana Lumbermen's*, 1 S.W.3d at 267. The United States Court of Federal Claims has embraced a similar requirement that a meeting of the minds results from expressions that would make a creditor "unreasonable not to understand...that the performance is offered to him as full satisfaction of his claim." *King Fisher Marine Service, Inc., v. United States*, 16 Cl.Ct. 231, 236–37 (1989). In the instant case, there was no ambiguity in the terms of the accord proposed by the defendant. Prolec should have obviously understood the terms of the settlement offer and is bound by its acceptance.

▮ The record also shows that the amount of the claim was subject to a bona fide dispute. Consideration for an accord and satisfaction is found in the "resolution of the uncertainty which exists as to the validity or amount of a claim." See *Dickson v. Stockman*, 411 S.W.2d 610, 613 (Tex.Civ.App.-Texarkana 1966, writ ref'd n.r.e.). Here, Prolec had submitted a claim for almost $250,000. It has consistently maintained that it is entitled to this sum under the Carmack Amendment and that there was no valid limitation of liability between the parties. Conversely, Defendant maintained that it had successfully limited its liability to only $50,000. The tendered $50,000 for settlement of the claim was offered in consideration of the resolution of this dispute.

▮ The letter accompanying the settlement check included a conspicuous statement indicating that the instrument was tendered in full satisfaction of the claim. The Texas Supreme Court has adopted the UCC standard for conspicuousness. *Dresser Indus. Inc. v. Page Petroleum*, 853 S.W.2d 505, 511 (Tex.1993). A clause is conspicuous if it is "so written that a reasonable person against whom it is to operate ought to have noticed it." Tex. Bus. & Com.Code Ann. § 1.201(10) (Vernon 1994).[3] Conspicuousness is a matter of law for the court to decide. *Id.* A provision on the front side of a contract, not hidden under a misleading heading or surrounded by unrelated terms, is conspicuous. *Enserch Corp. v. Parker*, 794 S.W.2d 2, 9 (Tex.1990). The language in Defendant's letter to the Plaintiff describing the enclosed check as the limit of its liability was on the front of a one-page letter and not hidden within boilerplate language or mislabeled headings. It was sufficient to satisfy the conspicuousness requirement.

It is undisputed that Plaintiff obtained payment of the instrument and that the

---

**3.** § 1.201 is entitled "General Definitions" and provides definitions for the entire title, subject to additional definitions contained in subsequent chapters. The Court also notes that Chapter 3 of the Code, where the provisions concerning Accord and Satisfaction are found, does not contain an alternate definition for "conspicuous."

Plaintiff cashed the Defendant's check. According to § 3.311(c)(2) of the Code, a claimant may repudiate an accord and satisfaction by repaying the money within 90 days of receipt. This is a more generous standard than that described in Texas caselaw, which requires a party to return the check uncashed in order to prevent an accord and satisfaction. *Indiana Lumbermen's,* 1 S.W.3d at 267. Here, the Plaintiff did neither. It cashed the check, and eight months later filed suit to recover the rest of the claimed debt. There is no indication that Plaintiff ever attempted to return the $50,000 payment.

For the foregoing reasons, the Court concludes that Defendant has established the defense of accord and satisfaction in this case. Defendant's motion for summary judgment is therefore GRANTED.